T.C. Memo. 2015-60

UNITED STATES TAX COURT

OLIN GLENN SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31080-12L.                    Filed March 26, 2015.

<u>William Lance Stodghill</u>, for petitioner.

<u>Susan Kathy Greene</u> and <u>Gordon P. Sanz</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  This case is before the Court to review respondent's

Office of Appeals' December 4, 2012 notice of determination sustaining a

proposed levy to collect from petitioner certain trust-fund-recovery penalties for

taxable periods ending March 31, June 30, and September 30, 2009 (that is, the

[*2] first, second, and third quarters of 2009).  We review this notice of determination pursuant to section 6330(d)(1).  All section references are to the Internal Revenue Code in effect at all relevant times unless otherwise indicated.

In that notice of determination respondent's Office of Appeals refused to consider petitioner's arguments that he should not be liable for the penalties, concluding that in 2010 petitioner had already been afforded an opportunity to dispute his underlying penalty liabilities.  We agree that petitioner had a prior opportunity.  We sustain the notice of determination.

FINDINGS OF FACT

Petitioner resided in Texas when he filed his petition.

On October 20, 2010, respondent sent a Letter 1153, Trust Funds Recovery Penalty Letter, by certified mail to petitioner advising him that he "propose[d] to assess" trust-fund-recovery penalties against petitioner personally for failing to collect and pay over the employment taxes of employees of Vito's South Limited Partnership for the first, second, and third quarters of 2009.  That Letter 1153 further told petitioner he had the "right to appeal or protest this action."  It gave him 60 days to "mail" a "written appeal" to the IRS.  The letter directed petitioner to send the written appeal to "R.T. Redfield" at the address for an office of respondent on Gulf Freeway in Houston, Texas.  At the top of the letter was a

[*3] heading for "IRS Telephone Number". Under this appeared the telephone number "(281) 795-8977".

Petitioner received the above Letter 1153 and faxed a copy of it to his certified public accountant, Douglas Dickey. Dickey was a partner with DRDA, a certified public accountancy firm with five partners and over 40 staff members.

On November 11, 2010, Dickey prepared and signed a letter addressed to "R.T. Redfield". The inside address (i.e., the recipient's address) on the letter which Dickey prepared and signed was the address of respondent's Houston office on Gulf Freeway from the Letter 1153. Dickey's letter stated that petitioner requested a "conference" regarding "the taxpayer and Vito's South LPs' Form 941s, Employer's Quarterly Federal Tax Return, for the tax periods ended 3/31/09, 6/30/09, and 9/30/09." The letter asserted that petitioner had withdrawn as a partner of Vito's South Limited Partnership as of January 1, 2008, and therefore, the letter claimed, petitioner "should not be held liable for the payroll taxes and related penalties incurred after his withdrawal." Attached to the letter was a copy of the Letter 1153. Further attached was a form on which petitioner gave Dickey the authority to represent him before respondent. The form identified the matter for which Dickey was authorized to represent petitioner as follows:

[*4]

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) *** |
|---|---|---|
| Payroll | 941 | 2009 |

Also attached to the letter was a document entitled "Statement of Fact" signed by petitioner. The statement said in part: "I withdrew as partner of Vito's South LP as of 1/1/08. I should not be liable for any payroll taxes, penalties or interest that occurred for Vito's South LP after the date of my withdrawal." What happened to the letter after Dickey signed it on November 11, 2010, is in dispute between the parties and was the subject of the partial trial in this case. Dickey testified that he gave the letter to a member of his staff at DRDA to mail to the IRS.[1]

On April 9, 2012, respondent assessed the trust-fund-recovery penalties against petitioner for the first, second, and third quarters of 2009. On the same day, he sent petitioner notices demanding payment of those trust-fund-recovery penalties.

---

[1]As discussed more fully infra part IV.A we conclude Dickey and his firm did not mail the letter to respondent after Dickey signed the letter on November 11, 2010. Over two years later on November 28, 2012, Dickey's firm faxed the Office of Appeals a copy of the November 11, 2010 letter which Dickey had prepared. See infra p. 7.

**[\*5]**  In response to the notices, Dickey mailed respondent a letter stating that petitioner had withdrawn from Vito's South Limited Partnership on December 31, 2007, and that respondent should contact the tax matters partner for the partnership instead of Dickey.[2]

After May 9, 2012, Dickey or his firm attempted to telephone Revenue Officer Redfield about petitioner's liability for the trust-fund-recovery penalties. See infra part IV.B.

On May 14, 2012, respondent sent petitioner three Notices CP504, Notice of Intent to Levy, informing petitioner that he had to pay the trust-fund-recovery penalty liabilities for the first, second, and third quarters of 2009.  Each notice dealt with petitioner's aforementioned liability for one of the three respective calendar quarters.

On May 23, 2012, Dickey wrote a letter to respondent responding to the three CP504 Notices.  In this letter Dickey said:

> We called the IRS on May 9, 2012 and was [sic] told that this case has been sent to R.T. Redfield at 281-795-8977.  We have tried numerous times to contact Ms. Redfield, but she has not returned our phone call.

---

[2]Petitioner asserts that Dickey mailed this letter on April 2, 2012.  Although the letter was dated April 2, 2012, the text of the letter responds to the notices dated April 9, 2012.  We conclude that the letter was sent to respondent shortly after petitioner (and Dickey) received the April 9, 2012 notices.

[*6]  Please * * * abate these penalties as * * * [petitioner] was not a
partner of Vito's South LP during 2009.

On July 30, 2012, respondent sent petitioner a notice that he proposed to levy to collect the trust-fund-recovery penalties for the first, second, and third quarters of 2009. The notice stated that petitioner could request a collection-review hearing with the Office of Appeals.

On July 30, 2012, Dickey sent the Office of Appeals a request for a collection-review hearing on behalf of petitioner stating that petitioner was not a partner of Vito's South Limited Partnership during 2009 and that the penalties should be abated.

The Office of Appeals assigned petitioner's administrative collection-review hearing to a settlement officer in Fresno, California.

On October 26, 2012, the settlement officer sent a letter to petitioner stating that as part of the collection-review hearing she had scheduled a telephone conference for November 28, 2012. She informed petitioner that because he had received a Letter 1153 in 2010, he could not raise the issue of the underlying liabilities for the trust-fund-recovery penalties.

On November 28, 2012, the settlement officer conducted a telephone conference with Dickey, who attempted to challenge petitioner's underlying

[*7] liabilities for the trust-fund-recovery penalties. However, the settlement officer determined that petitioner was precluded from challenging the underlying liabilities because he had had a prior opportunity to do so when he received a Letter 1153. Because petitioner took the position that he was not liable for the penalties, he did not ask the settlement officer to consider a collection alternative to the proposed levy, such as an installment agreement or an offer-in-compromise. After the conference call with the settlement officer, Dickey's firm faxed the settlement officer a copy of the November 11, 2010 letter. The cover page to the fax stated: "We could not locate the certified mail receipt."

On December 4, 2012, the Office of Appeals sent petitioner its notice of determination upholding the proposed levy.

Petitioner filed his Tax Court petition challenging the notice of determination. The parties agree that if the Court determines that petitioner had a prior opportunity to challenge the penalties under section 6330(c)(2)(B), then the Court should sustain the notice of determination. The Court held a partial trial on the issue of whether petitioner had a prior opportunity to challenge the penalties.

OPINION

Before respondent can collect a tax from a taxpayer through a levy, he must first assess the tax. See sec. 6502(a). If the taxpayer refuses to pay the

[*8] assessment, respondent can then seize the taxpayer's property through his power of levy. Sec. 6331(a) and (b). Before he can levy, he generally must first offer the taxpayer a collection-review hearing with his Office of Appeals. Sec. 6330(a)(1).

The collection-review hearing--and the Office of Appeals' determination following the hearing--are governed by section 6330(c). Section 6330(c) provides:

SEC. 6330(c). Matters Considered at Hearing. In the case of any hearing conducted under this section--

(1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met.

(2) Issues at hearing.--

(A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--

(i) appropriate spousal defenses;

(ii) challenges to the appropriateness of collection actions; and

(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

**[*9]**    (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

(3) Basis for the determination.--The determination by an appeals officer under this subsection shall take into consideration--

(A) the verification presented under paragraph (1);

(B) the issues raised under paragraph (2); and

(C) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

Once the Office of Appeals has made the determination contemplated by section 6330(c)(3), a taxpayer can petition the Tax Court for review of the determination. Sec. 6330(d)(1).

As shown above, section 6330(c)(2)(B) provides that a taxpayer can challenge the existence or amount of the underlying tax liability before the Office of Appeals if the taxpayer did not have a prior opportunity to dispute the liability. If the taxpayer had such a prior opportunity, the Office of Appeals does not violate section 6330 by refusing to consider the taxpayer's challenge to the liability. See Goza v. Commissioner, 114 T.C. 176, 180-181 (2000). If the taxpayer did not

**[\*10]** have a prior opportunity to dispute the liability, the Tax Court can review de novo the taxpayer's challenge to the underlying liability when it reviews the notice of determination. See, e.g., Mason v. Commissioner, 132 T.C. 301, 316, 320-321 (2009). Alternatively, the Tax Court can remand the case to the Office of Appeals for consideration of the taxpayer's challenge to the underlying liability. See Kuykendall v. Commissioner, 129 T.C. 77, 82 (2007); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001). The parties agreed that this Court should hold a partial trial to resolve the issue of whether petitioner had a prior opportunity to dispute his liabilities for the trust-fund-recovery penalties. They further agreed that if this Court as a result of that trial concludes that petitioner had a prior opportunity, then this Court should sustain respondent's December 4, 2012 notice of determination. They further agreed that if this Court concludes that petitioner had no prior opportunity, then the Court should remand this case to the Office of Appeals to consider petitioner's underlying liabilities for the penalties. These agreements are reflected in the following discussion between the Court and the parties a day before the partial trial:

> THE COURT: Ms. Greene [counsel for respondent], I understand both you and Mr. Stodghill [counsel for petitioner] are in agreement that the trial should be confined to the issue of prior opportunity.

[*11] MS. GREENE: That's correct, Your Honor.

THE COURT: Mr. Stodghill?

MR. STODGHILL: Yes, Your Honor.

THE COURT: Would the parties agree that if the Court finds that there was no prior opportunity, that the Court should remand the case to the appeals office to evaluate the existence and amount of tax liability, and if there was prior opportunity, the Court should sustain the determination--Ms. Greene?

MS. GREENE: Respondent [the Commissioner of Internal Revenue] agrees with that.

THE COURT: Mr. Stodghill?

MR. STODGHILL: Yes, Your Honor.

The next day, the Court held a trial on the issue of whether petitioner had a prior opportunity to dispute his liability for the trust-fund-recovery penalties. After the trial, the parties filed respective simultaneous opening briefs. They later filed respective simultaneous answering briefs. In his opening and answering briefs, petitioner makes various challenges to the December 4, 2012 notice of determination upon which this case is based.

**[*12]**                                           I.

We first consider petitioner's alternative argument that the Office of Appeals failed to "obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1). Specifically, petitioner contends that Redfield, the revenue officer who handled respondent's trust-fund-recovery penalty matter against petitioner, violated the Internal Revenue Manual by failing to interview him. We will not permit petitioner to make this argument. The partial trial was limited to the question of whether petitioner had a prior opportunity to dispute his underlying liabilities for the penalties. It did not concern other possible earlier errors made by the Office of Appeals--or by Redfield. Before that trial the parties agreed that the December 4, 2012 notice of determination, upon which this case is based, should be sustained if we conclude following that trial that petitioner had a prior opportunity to dispute the underlying liabilities. By so agreeing, petitioner waived his right to press any other potential errors made by the Office of Appeals, including his allegation that the Office of Appeals violated the verification requirement. Furthermore, petitioner waited until his answering brief to make the verification-requirement argument. The argument is thus untimely and, more importantly, is precluded by the parties' pretrial agreement.

**[*13]**                                                   II.

Next we consider petitioner's second alternative argument, that the Office of Appeals failed to consider all of the issues that he raised at his collection-review hearing. Petitioner contends that he requested that the penalties be abated in three different letters written by Dickey (the letter written by Dickey in response to the April 9, 2012 notices, the letter sent by Dickey on May 23, 2012, and the letter sent by Dickey on July 30, 2012). He argues that his request for abatement of the penalties was therefore an "issue" he raised at the hearing that the Office of Appeals was required to "take into consideration." Section 6330(c)(2) allows a person to "raise at the hearing any relevant issue", and section 6330(c)(3) requires the Office of Appeals to "take into consideration" the "issues raised under" section 6330(c)(2). However, section 6330(c)(2)(B) provides that a person may "raise at the hearing challenges to the existence or amount of the underlying tax liability" if the person did not "have an opportunity to dispute such tax liability." Petitioner's request for abatement of the penalties is a "challenge[] to the existence or amount of the underlying tax liability." If petitioner had a prior opportunity to dispute his liability for the penalties--and respondent argues he did--then the Office of Appeals was not required to consider his challenge to the existence or amounts of the penalties. See Pough v. Commissioner, 135 T.C. 344, 349 (2010); Goza v.

[*14] Commissioner, 114 T.C. at 180-181; Orian v. Commissioner, T.C. Memo. 2010-234, slip op. at 11.

### III.

Next, we consider petitioner's third alternative argument, that "[t]he settlement officer abused her discretion in sustaining the levy by failing to properly balance collection efficiency against the intrusive nature of the levy." Specifically, petitioner contends that because of the large amounts of the penalties sought to be collected (the July 30, 2012 notice of proposed levy stated that petitioner owed a total of $36,573.67), it was an abuse of discretion for the Office of Appeals not to first consider petitioner's request for abatement before sustaining a collection action. We will not permit petitioner to raise this argument. The argument is premised on the Office of Appeals' alleged failure to satisfy its duty under section 6330(c)(3) to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Petitioner agreed before trial that the Court should sustain respondent's notice of determination if the Court concluded that petitioner had a prior opportunity to dispute his liability for the penalties. Thus, petitioner has waived the section 6330(c)(3) argument. Furthermore, petitioner did not advance the argument until

**[\*15]** filing his answering brief. The argument is thus untimely and is precluded by the parties' agreement.

### IV.

Finally, we address petitioner's primary argument, that he did not have a prior opportunity to challenge his underlying trust-fund-recovery-penalty liabilities. Unlike petitioner's alternative arguments in parts I, II, and III of this opinion, this issue is properly before us and was the subject of the partial trial.

We have held that a taxpayer who received a Letter 1153, providing him the opportunity to administratively appeal his liabilities for the trust-fund-recovery penalty, and who declines to make such an appeal, had an opportunity to dispute the underlying liability. Pough v. Commissioner, 135 T.C. at 349; Orian v. Commissioner, slip op. at 13; see also sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. ("An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."). A Letter 1153 is the method by which respondent satisfies section 6672(b)(1). Lee v. Commissioner, 144 T.C. ___, ___ (slip op. at 12) (Jan. 21, 2015); Thompson v. Commissioner, T.C. Memo. 2012-87, slip op. at 7. Section 6672(b)(1) requires him to notify a person in writing before he can assess a trust-fund-recovery penalty liability against the person. See Mason

[*16] v. Commissioner, 132 T.C. at 322-323. After sending the Letter 1153, he allows the person 60 days to administratively appeal the proposed assessment to the Office of Appeals. See Rev. Proc. 2005-34, sec. 4, 2005-1 C.B. 1233, 1234. Section 6672(b)(3)(B) provides that if the person makes a "timely protest of the proposed assessment", then the limitations period on respondent assessing the penalty does not expire until 30 days after his final determination regarding the protest.[3]

Petitioner received the October 20, 2010 Letter 1153 offering him a chance to protest his liabilities for the penalties. Petitioner asserts that his representative, Dickey, sent a November 11, 2010 letter to Redfield responding to the Letter 1153 and requesting a conference and, therefore, administratively appealed petitioner's liabilities for the penalties. He further asserts that Dickey followed up on the November 11, 2010 letter by attempting to telephone Redfield. Respondent, on the other hand, denies that such November 11, 2010 letter was sent and that petitioner made the telephone calls to Redfield shortly thereafter. We will decide these disputed factual matters as part of our resolution of the issue of whether

---

[3]The limitations period is described in general terms in Hickey v. Commissioner, T.C. Memo. 2009-2, slip op. at 13 n.6.

[*17] petitioner had a prior opportunity to dispute his underlying liabilities for the penalties.

## IV.A

In evaluating the question of whether the November 11, 2010 letter was actually sent in late 2010, we consider Dickey's testimony that he gave the letter to his "staff for processing and sending to Treasury." While this testimony is relevant, we have little idea of how Dickey's firm processed Dickey's outgoing letter. We did not hear firsthand testimony, for example, from the staff member who would have handled and effected the mailing of the November 11, 2010 letter. We therefore are not inclined to presume, on the basis of petitioner's suggestion of the reliability of Dickey's firm's system for processing outgoing mail, that the November 11, 2010 letter in question was actually deposited into the U.S. mail for delivery to the addressee. Furthermore, what little evidence there is about what happened to the letter after Dickey signed it indicates that the letter was not sent. Dickey testified that no certified or registered mail receipt for the letter was found in his files at his firm. Had the November 11, 2010 letter been sent to the IRS as Dickey mentioned, most likely it would have been sent by certified or registered mail. We infer this from the importance of the letter and from the fact that Dickey and his firm searched for a copy of a certified or

[*18] registered mail receipt.[4] We further believe that had any certified or registered mail receipt existed, Dickey would have instructed, and his firm's staff would have understood, that this receipt should be retained in Dickey's files. Therefore, the lack of such a receipt in Dickey's files is an indication that the letter was not mailed.[5]

No copy of the November 11, 2010 letter was found in the files of respondent, the intended recipient. The absence of the letter from his files is of some probative value to us in determining whether Dickey's firm sent the letter to

---

[4]Dickey testified that when his firm drafts a letter to be sent by certified or registered mail, it notes such transmission via certified or registered mail on the letter itself. However, he testified that the firm had no such practice in November 2010 when the letter was drafted and allegedly sent to respondent. Therefore, the mere absence of such a notation on the letter alone fails to establish that Dickey did not intend to send it by registered or certified mail.

[5]If the evidence had shown that Dickey's firm did not keep the signed original of the November 11, 2010 letter in its files, that might indicate that the signed original went somewhere else, i.e., to respondent. However, there is no such evidence in the record. The only copy of the November 11, 2010 letter in the record is found in Exhibit 10-J. The parties stipulated that on November 28, 2012, Dickey's firm "sent" to the Office of Appeals "an 11-page fax which included the following: * * * a letter from petitioner's CPA, Douglas Dickey, dated November 11, 2010, to the Internal Revenue Service ". The parties further stipulated that Exhibit 10-J is "a true and correct copy of the * * * fax". None of these stipulations address whether the actual papers fed into the fax machine at Dickey's firm were the original signed copy of the November 11, 2010 letter, as opposed to a retained copy of the November 11, 2010 letter. Petitioner did not contend in his brief that there was any proof that the November 11, 2010 letter faxed by Dickey's firm on November 28, 2012, was merely a retained copy.

[*19] him by late 2010, but it is not dispositive. He searched only the files that he

kept on the trust-fund-recovery penalties asserted against petitioner. He did not

search the file he kept on the employment-tax liabilities of Vito's South Limited

Partnership and did not explain why he did not do so.[6] The two types of liabilities

are related, but they are not the same.[7] The Commissioner keeps separate files on

---

[6]Petitioner does not contend that respondent's failure to search his employment tax files regarding Vito's South Limited Partnership gives rise to an adverse inference that the files would show that Dickey's firm sent the letter. We therefore make no such inference.

[7]As an employer, Vito's South Limited Partnership was required to withhold Federal Insurance Contributions Act ("FICA") tax and income tax from its employees' wages, hold them in a so-called "trust fund" for the United States, and pay them over to the United States. See sec. 3402(a)(1) (requiring employer to withhold income tax from wages); sec. 3403 (employer is liable for paying income tax it is required to withhold); sec. 3101 (imposing FICA tax on wage earners); sec. 3102(a) (requiring employer to withhold from wages the amount of the tax imposed by sec. 3101); sec. 3102(b) (employer is liable for paying tax it is required to withhold under sec. 3102(a)). Vito's South Limited Partnership was also liable for the employer's share of FICA taxes. See sec. 3111(a) and (b). All these liabilities are reported on Form 941, Employer's Quarterly Federal Tax Return.

Sec. 6672(a) imposes a penalty on persons, other than the employer, who are responsible for withholding taxes. Liability under sec. 6672 is different from the employer's liability for payment of the taxes required to be withheld. See Howard v. United States, 711 F.2d 729, 733 (5th Cir. 1983); United States v. Pomponio, 635 F.2d 293, 298 (4th Cir. 1980); Monday v. United States, 421 F.2d 1210, 1218 (7th Cir. 1970). Though the two liabilities are separate as a conceptual matter, the IRS endeavors to collect an amount required to be withheld and paid over only once--from the employer if possible, and if not, from a responsible person under sec. 6672. USLIFE Tit. Ins. Co. of Dallas v. Harbison, 784 F.2d

(continued...)

[*20] each type of liability. He acknowledges the possibility that if he, in late 2010, received the November 11, 2010 letter, that letter could have been placed in his files for the employment-tax liabilities of Vito's South Limited Partnership rather than his files for the trust-fund-recovery penalty liabilities asserted against petitioner. So while of some relevance, the absence of the letter from his trust-fund-recovery penalty files for petitioner is not dispositive.

The evidence on whether the November 11, 2010 letter was sent by Dickey's firm to respondent in late 2010 is less than satisfactory. Although we cannot be certain the letter was not sent, we conclude, on the basis of the evidence presented, that it is more likely than not that the letter was not sent. Therefore, we find that the letter was not sent. This finding is appropriate because (1) the preponderance-of-evidence standard is the relevant standard for determining whether Dickey's firm sent the letter, see Sego v. Commissioner, 114 T.C. 604, 611 (2000) (holding that the determination of whether a taxpayer has received a notice of deficiency, so as to preclude a challenge to the underlying tax liability, is made on a preponderance of the evidence), and (2) the preponderance-of-evidence

---

[7](...continued)
1238, 1243 (5th Cir. 1986); Pomponio, 635 F.2d at 298. Respondent contends that petitioner is such a responsible person.

[*21] standard is met if the fact is more likely than not to be true (see United States v. Barksdale-Contreras, 972 F.2d 111, 115 (5th Cir. 1992)).

IV.B

We now evaluate petitioner's contention that Dickey "followed up" the November 11, 2010 letter with attempts to reach Redfield by telephone concerning that letter. Petitioner's use of the words "followed up" suggests that the alleged attempts took place shortly after the November 11, 2010 letter. Dickey testified that he attempted to reach Redfield about the November 11, 2010 letter. However, his testimony does not specify the date or dates on which these telephone calls were allegedly made. On May 23, 2012, Dickey wrote a letter to the IRS in which he referred to attempted telephone contacts with Redfield. He wrote: "We called the IRS on May 9, 2012, and was [sic] told that this case has been sent to R.T. Redfield at 281-795-8977. We have tried numerous times to contact Ms. Redfield, but she has not returned our phone call." Respondent contends that the reference in Dickey's letter to a telephone conversation with the IRS on May 9, 2012, in which he learned that the penalty case was still being handled by Redfield, followed by a reference to alleged attempts to reach Redfield by telephone, suggests that Dickey's attempts to reach Redfield about the November 11, 2010 letter took place after May 9, 2012. In his brief petitioner does not dispute

[*22] respondent's interpretation of the May 23, 2012 letter. In his testimony Dickey did not explain whether this is what he suggested in his May 23, 2012 letter. On the basis of the May 23, 2012 letter, and taking into account the lack of specificity in Dickey's testimony, we find that sometime after May 9, 2012, Dickey attempted to reach Redfield by telephone to dispute petitioner's liability for the trust-fund-recovery penalties.

## IV.C

Having resolved the above factual matters in parts IV.A and IV.B, the Court finds the following facts are established regarding petitioner's opportunity to dispute his liability for the trust-fund-recovery penalties:

- On October 20, 2010, respondent sent petitioner the Letter 1153 giving him 60 days to appeal the proposed assessment of the trust-fund-recovery penalties attributable to the unpaid employment taxes of Vito's South Limited Partnership for the first, second, and third quarters of 2009.

- On November 11, 2010, petitioner's representative, Dickey, prepared and signed a letter in response to that Letter 1153. However, that November 11, 2010 letter was not sent to respondent.

- On April 9, 2012, not having received an appeal of the proposed assessment from petitioner, respondent assessed the penalties against petitioner.

[*23] ●      On April 9, 2012, respondent sent petitioner notices that he was liable for the penalties.

●      In response, Dickey sent a letter to respondent stating that before 2008 petitioner had withdrawn from Vito's South Limited Partnership.

●      After May 9, 2012, Dickey or his firm attempted to reach Redfield by telephone about petitioner's liabilities for the trust-fund-recovery penalties.

●      On May 23, 2012, Dickey wrote a letter to respondent asking him to abate the penalties.

●      On July 30, 2012, Dickey requested an administrative collection-review hearing as to the proposed levy with the Office of Appeals; during that administrative collection-due-process proceeding, respondent's settlement officer took the position that petitioner had had a prior opportunity with the Office of Appeals to dispute his liability for the penalties.

Given the foregoing facts, we agree with respondent that petitioner had a prior opportunity to dispute his liability for the trust-fund-recovery penalties. In the Letter 1153 dated October 20, 2010, respondent afforded petitioner an opportunity to appeal the proposed assessment of the penalties. Petitioner inadvertently failed to make such an appeal. Although petitioner's accountant Dickey prepared a November 11, 2010 letter that was supposedly an appeal,

[*24] Dickey did not send that November 11, 2010 letter to respondent in Houston in late 2010. Sometime on or after April 9, 2012, Dickey sent other letters, and sometime on or after May 9, 2012, he attempted to reach respondent's employee Redfield by telephone. But those letters and telephone calls occurred long after the 60-day period for responding to the Letter 1153 dated October 20, 2010. Thus, this is not an instance in which a person administratively appealed the trust-fund-recovery penalty in response to a Letter 1153 and respondent refused to consider and entertain the protest.

We need not address respondent's argument that once a person has received a Letter 1153, that person should be considered to have had an opportunity to dispute the trust-fund-recovery penalty liabilities even if the person actually timely protests the Letter 1153 and the Office of Appeals fails to consider the protest.[8] If correct, the argument would mean that it would not have mattered even if

---

[8]Respondent argues:

> The TFRP [trust-fund-recovery penalty] liabilities that respondent seeks to collect in this CDP case were the subject of a Letter 1153 mailed to petitioner on October 20, 2010, which petitioner received. The Letter 1153 provided petitioner a prior opportunity for a conference with respondent's Office of Appeals to dispute the proposed TFRPs. Neither the plain language of I.R.C. § 6330(c)(2)(B) nor the applicable Treasury regulations and case law require that a taxpayer exercise his appeal rights or that a taxpayer actually receive an appeal to constitute a "prior opportunity."

[*25] petitioner had timely administratively appealed the Letter 1153 to the Office of Appeals, but respondent arbitrarily refused to hear his appeal. On the facts presented here, we need not adopt nor reject respondent's argument.

Respondent also argues that the November 11, 2010 letter should not be considered an appeal of the proposed penalty assessment because of alleged "defects". For example, respondent contends that the letter refers only to the employment-tax liability of Vito's South Limited Partnership, not the trust-fund-recovery penalty liabilities of petitioner, and that therefore the letter could not be considered an appeal of petitioner's penalty liabilities. We need not consider whether the letter was defective in these regards and should not be considered an appeal of the trust-fund-recovery penalty liabilities asserted against petitioner because we find that the letter was never sent to respondent in late 2010. Thus, it does not matter if the letter might not have qualified as an appeal. Respondent also argues that the alleged defects in the letter show he did not receive it because he would have responded to a defective appeal letter by asking petitioner to clarify it. We determine that the letter was not sent by Dickey without having to draw such a factual inference.

Respondent takes the position that petitioner has the burden of proof with respect to all relevant factual matters. We need not resolve the question of

**[\*26]** whether petitioner has the burden of proof on the issue of whether section 6330(c)(2)(B) precludes him from disputing the underlying liabilities. This is because our factual findings are supported by the preponderance of the evidence presented, and we reach the same conclusion regardless of which party bears the burden of proof. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

The parties agree that if petitioner had a prior opportunity to dispute his underlying liabilities then the December 4, 2012 notice of determination upon which this case is based would generally otherwise have to be reviewed under an abuse-of-discretion standard. See Goza v. Commissioner, 114 T.C. at 180-182. However, as discussed above, the parties have further agreed that if the Court pursuant to the partial trial concludes petitioner received a prior opportunity to dispute his underlying trust-fund-recovery penalty liabilities, the December 4, 2012 notice of determination should be sustained by the Court.

In the light of the foregoing and the parties' agreement concerning the partial trial, we sustain the notice of determination.

**[*27]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.