**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1154**

CHRISTOPHER A. IAMES,

Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 10306-14L)

Argued: January 25, 2017                    Decided: March 7, 2017

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:** Alvah Lavar Taylor, LAW OFFICES OF A. LAVAR TAYLOR, LLP, Santa Ana, California, for Appellant. Jennifer Marie Rubin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Jonathan T. Amitrano, LAW OFFICES OF A. LAVAR TAYLOR, LLP, Santa Ana, California; William Wise, WISE & STRACKS, Chicago, Illinois, for Appellant. Caroline D. Ciraolo, Principal Deputy Assistant Attorney General, Diana L. Erbsen, Deputy Assistant Attorney General, Gilbert S. Rothenberg, Michael J. Haungs, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

WILKINSON, Circuit Judge:

This tax administration case presents the question of whether the appellant, Christopher Iames, may contest his tax liability in a collection due process (CDP) hearing under Section 6330 of the Internal Revenue Code. Iames unsuccessfully challenged his liability in a preassessment hearing before the Office of Appeals of the Internal Revenue Service (IRS). He later sought to raise the same issue before the same administrative unit in his CDP hearing. The Office of Appeals concluded that Section 6330 prohibited him from disputing his liability a second time, and the Tax Court agreed. For the reasons that follow, we affirm the judgment of the Tax Court and hold that Iames is barred from contesting the issue of his tax liability in the CDP hearing.

## I.

We first set forth the statutory framework on CDP hearings before turning to the particulars of this case.

## A.

Section 6330 provides a set of procedural safeguards for taxpayers facing a potential levy action by the IRS: notice, an administrative hearing, and judicial review. 26 U.S.C. § 6330; *see Goza v. Comm'r*, 114 T.C. 176, 179-80 (2000). Congress enacted Section 6330 as part of its broader efforts to reform the IRS's tax collection process and to protect taxpayers from abusive or arbitrary collection practices. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401(b), 112 Stat. 685, 747-49.

2

Before collecting a delinquent tax through a levy on a taxpayer's property, the Commissioner must notify the taxpayer of his right to a hearing at least thirty days in advance. 26 U.S.C. § 6330(a). The taxpayer may then contest the levy in an administrative forum known as a "collection due process" hearing. § 6330(b)(1). At the taxpayer's request, the Office of Appeals is obligated to furnish an "[i]mpartial officer" to hear the taxpayer's challenge. § 6330(b)(3). The officer must verify that "the requirements of any applicable law or administrative procedure have been met." § 6330(c)(1). The hearing itself is informal: it may consist of "written or oral communications," and a transcript is not required. 26 C.F.R. § 301.6330-1(d)(2), Q&A-D6. After the Office of Appeals makes its determination, the taxpayer may petition the Tax Court for judicial review. 26 U.S.C. § 6330(d)(1).

In general, CDP hearings may address a broad array of challenges. The taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy." § 6330(c)(2)(A). Permissible issues, the statute notes, include classic collection-related matters such as "spousal defenses," "challenges to the appropriateness of collection actions," and "offers of collection alternatives." *Id.*

Section 6330 also limits the consideration of certain topics. Two restrictions—on tax liability challenges and issues already raised in prior proceedings—are relevant here. Section 6330(c)(2)(B) authorizes a taxpayer to challenge "the existence or amount of the underlying tax liability" so long as the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such

3

tax liability." § 6330(c)(2)(B). This case involves the "opportunity to dispute" portion of the provision. The statute does not define this term, but the IRS has interpreted it to include "a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." 26 C.F.R. § 301.6330-1(e)(3), Q&A-E2. In other words, according to the IRS, a taxpayer who could have appealed to the Office of Appeals cannot later challenge his tax liability in a CDP hearing. The Tax Court upheld the IRS's regulation as a reasonable interpretation of Section 6330 in *Lewis v. Commissioner*, 128 T.C. 48, 61 (2007).

Section 6330(c)(4) bars review of any issue that was "raised and considered" in any "previous administrative or judicial proceeding" if "the person seeking to raise the issue participated meaningfully" in the proceeding. 26 U.S.C. § 6330(c)(4). The Commissioner formerly interpreted the provision not to apply to liability issues in light of Section 6330(c)(2)(B)'s explicit discussion on that point. *See* Office of Chief Counsel, Internal Revenue Serv., Notice CC-2003-016, at 20 (2003). But the Commissioner's current interpretation simply restates the statutory language. *See* Office of Chief Counsel, Internal Revenue Serv., Notice CC-2006-019, at 33 (2006).

B.

Although the record in this case is sparse, the relevant facts are undisputed. The Commissioner proposed a civil penalty of approximately $61,000 against Iames for a reporting violation. Before the Commissioner assessed the tax, however, Iames pursued an administrative appeal. He filed a protest with the Office of Appeals, challenging the

4

imposition and amount of the penalty. The Appeals Officer reviewed the file and conducted a telephone conference with Iames's counsel. During the call, Iames's counsel requested particular documents; the officer agreed to look into the request and hold another conference. The officer followed up by letter a month later to schedule a second phone call. Hearing nothing in reply for three weeks, the officer sustained the penalty and closed the case.

The Commissioner initiated its administrative collection process and proceeded to assess the penalty. The Commissioner also notified Iames of the IRS's intent to levy and informed him of his right to a CDP hearing under Section 6330.

Iames requested a CDP hearing to challenge his tax liability. He did not request or propose an alternative collection method in lieu of the levy. Following two telephone conferences with Iames's counsel, the Office of Appeals sustained the Commissioner's collection action. The Notice of Determination explained that Iames was barred from disputing his tax liability in the CDP proceeding because he "was given the opportunity to raise any relevant issues relating to the unpaid tax" in the earlier hearing. J.A. 51.

Undeterred, Iames petitioned the Tax Court to review the Notice of Determination. The Commissioner moved for summary judgment, arguing that Section 6330(c)(2)(B) and (c)(4) barred Iames from disputing his underlying liability in light of his first appeal. The Tax Court agreed that liability was off-limits and granted summary judgment in the Commissioner's favor. Relying on the text of Section 6330(c)(2)(B), the associated regulation, and the *Lewis* decision, the court concluded that Iames "had a prior

5

opportunity to challenge the existence [and] the amount of the underlying liability and he may not do so here." J.A. 148. After two unsuccessful motions for reconsideration, Iames now appeals.

## II.

Courts of appeals review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Accordingly, we review de novo the Tax Court's grant of summary judgment. *Ripley v. Comm'r*, 103 F.3d 332, 334 n.3 (4th Cir. 1996). Summary judgment is appropriate only where, as here, no material facts are disputed and the moving party is entitled to judgment as a matter of law. *Dreamstreet Investments, Inc. v. MidCountry Bank*, 842 F.3d 825, 829 (4th Cir. 2016).

## III.

This case implicates both subsections (c)(2)(B) and (c)(4) of Section 6330: Iames seeks to dispute his tax liability in a CDP proceeding despite having already raised the issue in an earlier administrative appeal.[1] Because the Tax Court grounded its decision in

---

[1] Although Iames argues that he was also entitled to challenge his tax liability in the Tax Court, we discuss here his foundational contention: whether he was barred from bringing up the topic in his CDP hearing. Section 6330 prescribes the issues that may be raised "at the hearing." 26 U.S.C. § 6330(c)(2)(A), (c)(2)(B), (c)(4). The IRS correctly notes the Tax Court may review only "an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing." 26 C.F.R. § 301.6330-1(f)(2), Q&A-F3.

6

Section 6330(c)(2)(B), we begin with that provision and then consider Section 6330(c)(4). Both subsections, we hold, preclude CDP review of Iames's tax liability.[2]

Section 6330(c)(2)(B), titled "Underlying liability," allows a taxpayer to challenge his tax liability unless one of two exceptions applies. As noted, the statute provides that the "person may . . . raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C § 6330(c)(2)(B). There is no suggestion that Iames received a notice of deficiency.

Whether Section 6330(c)(2)(B) bars Iames from disputing his tax liability in his CDP hearing thus depends on whether his chance to request an administrative hearing before the Office of Appeals qualifies as an "opportunity to dispute [his] tax liability." Iames interprets the statute to preclude CDP review only where the taxpayer had a chance to contest his liability in court. He claims that an administrative opportunity (such as a hearing before the Office of Appeals) does not activate the bar on CDP liability review. The pertinent regulation, as mentioned above, provides that the availability of a preassessment conference with the Office of Appeals qualifies as an "opportunity to dispute" one's tax liability. *See* 26 C.F.R. § 301.6330-1(e)(3), Q&A-E2. Considering the

---

[2] The Commissioner also urges that this appeal be resolved as a matter of privity issue preclusion. Issue preclusion, as an affirmative defense, goes to the merits of a dispute, not mootness or jurisdiction as the Commissioner appears to believe. Fed. R. Civ. P. 8(c)(1); *see Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971). Given the reasoning set forth herein, we have no need to address the additional question of issue preclusion.

text and structure of Section 6330(c)(2)(B) as well as the purpose of the CDP provisions more generally, we conclude that such hearings activate Section 6330's prohibition. The fact that the IRS, through its regulation, interprets Section 6330(c)(2)(B) as we do reinforces our conviction that preassessment hearings before the Office of Appeals qualify as "opportunit[ies] to dispute" tax liability. Iames, therefore, is precluded from raising his tax liability in his CDP hearing.

In light of Section 6330(c)(2)(B)'s unqualified language, an administrative hearing is not categorically excluded from qualifying as "an opportunity to dispute" tax liability solely because it is administrative in nature. The statute unambiguously provides that a taxpayer may raise the issue of his liability in a CDP hearing if he has not yet had "an opportunity" to do so. By its own terms, then, Section 6330(c)(2)(B) does not specify "a judicial opportunity," but merely "an opportunity." The right to an administrative hearing may qualify as such "an opportunity." Iames's interpretation, by contrast, would add an adjective, "judicial," to the statute that Congress did not put there.

The portion of Section 6330(c)(2)(B) on notices of deficiency supports this interpretation. Courts must determine the meaning of statutory language "[not only] by reference to the language itself, [but as well by] the specific context in which that language is used." *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) (plurality opinion) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). As the Tax Court has emphasized, "receipt of a notice of deficiency serves as a taxpayer's ticket to the Tax Court." *Lewis*, 128 T.C. at 55. The resulting chance to litigate one's liability negates any

need for an additional challenge in the CDP context. Accordingly, Section 6330(c)(2)(B) provides that taxpayers who are given a notice of deficiency are barred from raising the issue in a CDP hearing. The provision then extends this bar to anyone who "otherwise" had the chance to dispute liability. 26 U.S.C. § 6330(c)(2)(B). The term "otherwise" suggests that the same principle animates both parts of Section 6330(c)(2)(B): taxpayers do not get an additional bite at the apple.

In holding that the prohibition on CDP liability review is not limited to prior judicial challenges, we need not specify what types of administrative hearings may or may not activate the bar. It is clear that the option to request a hearing with the Office of Appeals before the Commissioner assesses the tax counts as "an opportunity to dispute [one's] tax liability." First, taxpayers in these hearings have a genuine chance to explain why they should not be held to the amount requested by the Commissioner. Second, the Office of Appeals is an independent decisionmaker. As the Tax Court noted in *Lewis*, the law establishing Section 6330 also "mandate[d] that an independent appeals function exist within the IRS," *Lewis*, 128 T.C. at 59, suggesting that the Office of Appeals is "more than just a rubber stamp for the Commissioner's determinations," *id.* at 60. Finally, the Office of Appeals conducts both the preassessment hearing and the CDP hearing. We conclude that the former precludes the latter when it comes to tax liability.

This straightforward interpretation of Section 6330(c)(2)(B) also accords with the general focus of Section 6330 on the Commissioner's collection of a predetermined liability, not the merits of that liability. As the Supreme Court has observed, "the words

9

of a statute must be read . . . with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Congress enacted Section 6330 to make the collection process less onerous, to encourage negotiation between taxpayers and the Commissioner, and to impose a measure of procedural regularity and oversight on the Commissioner's significant and previously unfettered power to levy. Against this backdrop, Congress envisioned only limited CDP review of the taxpayer's underlying liability.

The scheme Congress devised reflects the problem—abusive collection practices—Congress sought to remedy. The statute provides that "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing." 26 U.S.C. § 6330(a)(1). This notice must describe "the proposed [collection] action . . . and the rights of the person with respect to such action," including "the alternatives available to taxpayers which could prevent levy on property" and "procedures relating to redemption of property." § 6330(a)(3)(C). The CDP hearing officer must verify that "the requirements of any applicable law or administrative procedure have been met." § 6330(c)(1). In addition to authorizing taxpayers to raise "any relevant issue relating to the unpaid tax or the proposed levy," Congress took care to green-light specific collection-related arguments. § 6330(c)(2)(A) (listing "appropriate spousal defenses," "challenges to the appropriateness of collection actions," and "offers of collection alternatives"). Finally,

10

the hearing officer must consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3)(C). Administrative appeals under Section 6330 are called "collection due process" hearings for a reason.

Within this collection-focused framework, liability review plays no more than a minor part: Section 6330(c)(2)(B) catches taxpayers who would otherwise fall through the cracks. After declaring broadly that a taxpayer may raise "any relevant issue," the statute mentions that the taxpayer can "also" bring up liability if he did not receive an earlier chance to do so. § 6330(c)(2)(B). The text of the provision accentuates the peripheral role Congress accorded to liability challenges at the CDP stage.

It is unsurprising that Congress prescribed such a narrow window for CDP liability review. As Iames himself explains in detail, taxpayers have "multiple opportunities to administratively challenge virtually every type of disputed tax liability" prior to a CDP hearing and well before any payment. Br. of Appellant at 12-13. These prepayment administrative avenues include preassessment hearings with the Office of Appeals (an option that Iames pursued), offers in compromise based on doubt as to liability, requests for audit reconsideration, and requests for abatement. *See id.* at 27-36.

This variety of administrative options suggests that Congress did not intend for CDP proceedings, which concern tax collections, to become the primary vehicle for liability challenges. Instead of throwing open the door to such arguments, Congress left it

11

but slightly ajar. Section 6330(c)(2)(B) strikes a balance between giving taxpayers at least one opportunity to dispute their tax liability and ensuring that prepayment liability challenges do not frustrate the process of revenue collection.

Here, Iames was afforded a meaningful opportunity to challenge the imposition and amount of the reporting penalty: he had the ability to request a preassessment hearing before the Office of Appeals. This was sufficient under Section 6330(c)(2)(B). Moreover, Iames took advantage of the hearing. He was represented by counsel, who filed his initial protest with the Office of Appeals. Prior to the hearing, the officer reviewed the revenue agent's report, the protest, and other documentation. The officer also conferred with a technical specialist. At the hearing, Iames's counsel actually contested Iames's liability and asked for additional documents. The officer followed up on this request, but Iames's counsel failed to respond. Plainly, then, Iames enjoyed "an opportunity to dispute [his] tax liability."[3]

IV.

Although the Tax Court did not address Section 6330(c)(4), the Commissioner contends that provision also prohibits Iames's liability challenge. The provision, titled

---

[3] Lacking a tenable textual argument, Iames resorts to the interpretive maxim *noscitur a sociis*, which counsels that "words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990). The canon, Iames argues, implies that only judicial opportunities qualify under Section 6330(c)(2)(B) because notices of deficiency enable taxpayers to litigate liability in court. But Section 6330(c)(2)(B), with just two parts, is no list. *See Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 289 (2010) ("[T]hese [three] items are too few and too disparate to qualify as a string of statutory terms . . . or items in a list." (internal quotation marks and citations omitted)). Not only does the maxim not suffice, then, to override the clear text of the statute; it is wholly inapplicable.

"Certain issues precluded," states that "[a]n issue may not be raised at the [CDP] hearing if . . . the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and . . . the person seeking to raise the issue participated meaningfully in such hearing or proceeding." 26 U.S.C. § 6330(c)(4).

Iames does not dispute any of the operative facts. The tax liability issue was raised in a "previous administrative . . . proceeding," his hearing with the Office of Appeals. The hearing officer considered—and ultimately rejected—his arguments. And Iames was represented at the hearing by counsel. We therefore agree with the Commissioner and hold that Section 6330(c)(4) bars Iames from challenging his liability in the CDP context.

Attempting to evade this straightforward application of clear statutory text, Iames suggests that Section 6330(c)(4) applies only to collection issues and not to liability issues, which are addressed exclusively in Section 6330(c)(2)(B). We cannot discern any limitation of this sort in the text of Section 6330(c)(4). Congress emphatically expressed its view that Section 6330(c)(4) has broad preclusive scope. The word "issue" is unqualified; it is not confined to collection matters. And "any" earlier proceeding suffices to knock an already-raised matter out of the CDP hearing. Once again, as with subsection (c)(2)(B), Iames is trying to add qualifying adjectival language to the statute that is simply not there.

Much of our explanation in the preceding section applies here. Section 6330(c)(2)(B) and (c)(4) share much in common. Both provisions incorporate the

principles of claim preclusion and issue preclusion, respectively, into the CDP context. They are motivated by the same idea: CDP hearings do not afford taxpayers a chance to relitigate questions that have already been settled or should have been. Subsection (c)(2)(B) concerns liability challenges that a taxpayer had a chance to raise, while (c)(4) applies to all issues that were actually disputed. Because Iames had an earlier opportunity to challenge his underlying tax liability and in fact took advantage of this opportunity, both provisions prevent him from contesting the same issue a second time in his CDP proceeding. Construing Section 6330's prohibitions on liability review in the narrow way Iames urges would wholly undermine Congress's efforts to fashion a limited window for liability challenges in the CDP context and to foreclose repetitive arguments. The Commissioner is entitled to judgment as a matter of law, and the Tax Court is accordingly

*AFFIRMED.*