155 T.C. No. 1

UNITED STATES TAX COURT

RICKEY B. BARNHILL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10374-18L.                          Filed July 21, 2020.

P was a director of Company ("C"). C failed to pay over to R employment withholding taxes for its employees for 10 quarters in 2010-12. R sent and P received a Letter 1153, "Trust Fund Recovery Penalty ["TFRP"] Letter", proposing to assess TFRPs under I.R.C. sec. 6672 against P as a responsible person for C. P filed an appeal disputing the TFRP liability before R's Office of Appeals ("Appeals"). Appeals sent P a Letter 5157 scheduling a conference and describing P's options for giving information and making arguments. P alleges, and this opinion assumes, that P never received the letter; and P did not participate in the conference. Appeals rejected P's appeal, determined that P was a responsible person for C, and assessed I.R.C. sec. 6672 penalties against him.

R filed a notice of Federal tax lien ("NFTL"), and P timely requested a collection due process ("CDP") hearing before Appeals. At the CDP hearing, P attempted to dispute his underlying liability for the penalties. Appeals rejected P's challenge after determining that, because P had received the Letter 1153, P had had a prior opportunity

to challenge the liability in his TFRP appeal. Appeals issued its determination sustaining the NFTL filing.

P timely filed a petition in this Court for review of Appeals' determination. R filed a motion for summary judgment, asserting that P's receipt of Letter 1153 afforded him a prior "opportunity", for purposes of I.R.C. sec. 6330(c)(2)(B), to challenge his liability for the TFRPs. P filed an opposition.

Held: If P received Letter 1153 but did not receive the subsequent correspondence (Letter 5157), then in the TFRP hearing Appeals did not afford P an "opportunity", for purposes of I.R.C. sec. 6330(c)(2)(B), to dispute his underlying TFRP liability. On these facts, P should not have been precluded from later disputing that liability at the CDP hearing; and Appeals would have abused its discretion in determining to sustain the NFTL.

Guy C. Crowgey, for petitioner.

Wendy C. Yan, for respondent.

OPINION

GUSTAFSON, Judge: This is a collection due process ("CDP") case brought pursuant to sections 6320(c) and 6330(d),[1] in which petitioner, Rickey B. Barnhill, asks us to review the determination by the Office of Appeals ("Appeals")

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code ("the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

of the Internal Revenue Service ("IRS") to sustain the filing of a notice of Federal tax lien ("NFTL") to collect section 6672 trust fund recovery penalties ("TRFP") assessed against him for failing to collect and pay over employment taxes of Iron Cross, Inc. ("Iron Cross"), for 10 calendar quarters ending June 30, 2010, through September 30, 2012. The case is before the Court on a motion for summary judgment filed by respondent, the Commissioner of the IRS. The issue for decision is whether section 6330(c)(2)(B) precluded Mr. Barnhill at the CDP hearing before Appeals (and precludes him in this case before the Tax Court) from challenging his liability for the penalties assessed against him because he had had a prior opportunity to challenge that liability in a hearing before Appeals. The Commissioner moved for summary judgment, asserting that Mr. Barnhill was precluded because his previous receipt of Letter 1153 concerning that liability afforded him a prior "opportunity", for purposes of section 6330(c)(2)(B), to challenge that TFRP liability. Mr. Barnhill filed an opposition. We hold that there is a genuine dispute as to material facts on the issue of whether Mr. Barnhill had a prior opportunity. We will therefore deny the Commissioner's motion.

Background

For purposes of the Commissioner's motion,[2] we assume correct the facts asserted by Mr. Barnhill that are supported by his filings, as well as the facts demonstrated by the Commissioner that Mr. Barnhill did not dispute. See infra part I.A.

Mr. Barnhill's role at Iron Cross

Mr. Barnhill was a director of Iron Cross. He contends that, for purposes of section 6672(a), see infra part I.B., he was not a "person required to collect, truthfully account for, and pay over" the employment taxes of Iron Cross and did not "willfully fail[] to collect such tax, or truthfully account for and pay over such tax". For purposes of the Commissioner's motion, we assume his contentions are correct.

Iron Cross's employment taxes

Iron Cross owed employment taxes--both the employer share and the "trust fund taxes"--i.e., the employee share that Iron Cross had been required to withhold

---

[2]See P & X Markets, Inc. v. Commissioner, 106 T.C. 441, 442 n.2 (1996) ("The 'facts' presented in this Opinion are stated solely for purposes of deciding the motion and are not findings of fact for this case. Fed. R. Civ. P. 52(a)"), aff'd without published opinion, 139 F.3d 907 (9th Cir. 1998).

from employee wages and pay over. Iron Cross did not file any tax returns, including employment tax returns, and did not pay the employment taxes.

The IRS assessed employment taxes against Iron Cross for the 10 calendar quarters at issue. The IRS also proposed assessments totaling approximately $160,000 against Mr. Barnhill as civil penalties under section 6672 (called "100% penalty", "trust fund recovery penalty", and "TFRP") for the unpaid trust fund taxes that were required to be withheld from employee wages and paid over. Mr. Barnhill contends that the proposed penalty assessment amounts exceeded substantially the actual amounts of the trust fund taxes; and for purposes of the Commissioner's motion, we so assume.

Letter 1153

The IRS sent Mr. Barnhill a Letter 1153, "Trust Fund Recovery Penalty Letter", dated November 16, 2016, proposing to assess the TRFPs against him as a responsible person who had failed to collect and pay over employment taxes with respect to employees of Iron Cross. Letter 1153 informs the taxpayer that if he does not agree, then within 10 days of the date of the letter he can contact the IRS employee identified in the letter or within 60 days he can submit a written appeal or protest. See, e.g., Mason v. Commissioner, 132 T.C. 301, 308 (2009). The IRS's Letter 1153 to Mr. Barnhill is not in the Tax Court record in this case, but it

is a form letter, and we take notice of the Letter 1153 that appears in the record in another case before this Court.[3] Letter 1153 makes the following suggestion:

> Include [in the protest] any additional information that you want the Settlement Officer/Appeals Officer to consider. You may still appeal without additional information, but including it at this stage will help us to process your request promptly. [Emphasis added.]

Thus, Letter 1153 indicates that the taxpayer's filing of his appeal is the first "stage" in this appeal process, rather than being the last chance in that process to submit information. (The subsequent Letter 5157, described below, is to the same effect.)

Mr. Barnhill received the Letter 1153, and in response he timely mailed a protest to Appeals on January 13, 2017, challenging the proposed TFRP assessments.

Letter 5157

In response to Mr. Barnhill's appeal, Appeals mailed to Mr. Barnhill (by regular mail, not certified) a Letter 5157, dated April 5, 2017. In the upper-right-

---

[3]In Chadwick v. Commissioner, 154 T.C. ___ (Jan. 21, 2020), a Letter 1153 sent by Appeals to the taxpayer in that case in 2016 (the same year as Appeals's Letter 1153 to Mr. Barnhill) appears as Exhibit D to the declaration (Doc. 9) submitted in support of the Commissioner's motion for summary judgment in that case.

hand corner the letter identified a "Person to contact" (by name, employee number,

and phone and fax numbers) and set an Appeals conference as follows:

> Conference information:
> Date: May 9, 2017
> Time: 10 am EST
> Via telephone:
> > Call: * * * [telephone number]

The Letter 5157 read as follows:

> Dear Mr. Barnhill:
>
> The Office of Appeals received your case for possible settlement, and it is assigned to me.
>
> I scheduled a telephone conference as shown above to discuss possible settlement of your case. Call me at the telephone number above within two weeks from the date of this letter [i.e., April 19, 2017] if you need to reschedule.
>
> You appealed the IRS's determination that you are responsible for the Trust Fund Recovery Penalty (TFRP) under Internal Revenue Code Section 6672. In TFRP protests, Appeals considers issues of responsibility and willfulness as well as the computation of the penalty amount. I'll consider the information in the administrative case file and the information provided in your protest in making my determination. If you have additional information to provide, please do so within two weeks from the date of this letter [i.e., April 19, 2017]. We'll discuss this information and my preliminary findings during our scheduled conference call.
>
> **The Appeals process**
>
> Appeals is an independent function within the IRS. Appeals reviews and resolves disputes in a fair and impartial manner by applying the

law and court decisions to the facts of your case. I'll consider the facts in your case and try to resolve your dispute with the IRS.

If you're new to Appeals, you should read the enclosed publications [sic].

- Publication 4227, *Appeals: Welcome*, includes more details about the Appeals process.

The conference will be informal and we'll discuss facts, arguments, and whether the law supports your position. If you present new information or raise new issues, I may refer your case to the originating office for consideration.

If you have questions about this letter or the Appeals process, you can call me at the number at the top of this letter. You can also visit our website at *www.irs.gov/appeals*.

Mr. Barnhill alleges, and for purposes of the Commissioner's motion we assume, that he did not receive this Letter 5157. Consequently, he did not get notice of the conference that had been scheduled for May 9, 2017, nor the contact information for the Appeals officer assigned to his case or her phone number to use for asking questions or rescheduling the conference. He did not receive Publication 4227 explaining the Appeals process. He did not see the Appeals officer's suggestion that he could provide "additional information" before the Appeals conference.

The failed Appeals conference

The time for the Appeals conference arrived at 10 a.m. on May 9, 2017; but Mr. Barnhill did not phone in, and the conference did not occur. Consequently, he did not have the occasion--described in the Letter 5157--to "discuss possible settlement of your case", to "discuss this information [he could provide] and * * * [the Appeals officer's] preliminary findings", to "discuss facts, arguments, and whether the law supports your position", or to "present new information or raise new issues". None of this occurred because (we assume) he had not received Letter 5157.

Letter 1536

The Appeals officer did not attempt to phone Mr. Barnhill or otherwise follow up the failed conference. Rather, two days after that scheduled date--i.e., on May 11, 2017--Appeals sent to Mr. Barnhill a Letter 1536 that stated:

> We're sorry that we couldn't reach agreement with you about the proposed assessment of the Trust Fund Recovery Penalty. We're returning your case to the Collection function for assessment of the liability as determined by Appeals.

The CDP lien notice and CDP hearing request

The IRS assessed the penalties and made notice and demand. When Mr. Barnhill did not pay the penalties, the Commissioner sent him on September 7,

2017, a Letter 3172, "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320" ("CDP Lien Notice"), advising him that the IRS had filed an NFTL with the Clerk of the Circuit Court of Chesterfield County, Virginia, and that Mr. Barnhill had the right to a hearing with Appeals.

Mr. Barnhill exercised that right; and on October 5, 2017, the IRS received his faxed letter and Form 12153, "Request for a Collection Due Process or Equivalent Hearing", in response to the CDP Lien Notice. In that CDP request, Mr. Barnhill disputed his liability for the TFRPs, stating:

> Taxpayer does not owe this tax. Taxpayer is not a responsible party under IRC §6672. Taxpayer has not had a meaningful opportunity to challenge this assessment.

(On his Form 12153 Mr. Barnhill also requested the withdrawal or subordination of the lien because "it is creating a significant hardship as it is a blemish on his credit report." However, he has evidently abandoned that issue and did not raise it in opposition to the Commissioner's motion.)

CDP hearing and determination

The CDP hearing took place, by means of written submissions and two telephone conferences between the Appeals officer and Mr. Barnhill's representative. Mr. Barnhill's representative submitted information about Iron Cross and Mr. Barnhill's role there in an attempt to convince the Appeals officer

that Mr. Barnhill should not be held liable for the TFRPs. However, the Appeals officer ultimately concluded that, because Mr. Barnhill had previously received Letter 1153 and had submitted an appeal, he was not entitled to challenge his liability at the CDP hearing. Her conclusion was not altered by Mr. Barnhill's contentions that he had not received the Letter 5157 and therefore had not been able to participate meaningfully in the Appeals conference about his TFRP liability.

On April 30, 2018, Appeals sent Mr. Barnhill a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code", in which Appeals sustained the NFTL filing. The notice of determination explained Appeals' conclusions that Mr. Barnhill was precluded from challenging his underlying liability because he had had a prior opportunity to do so when he had received the Letter 1153 proposing the penalty assessments.

Mr. Barnhill timely filed his petition in this Court on May 29, 2018, arguing that he is not liable for the TFRPs because he was not a responsible person at Iron Cross, that the amounts of the TFRPs were "grossly overstated", and that Appeals erred by concluding that he was not entitled to challenge his liability in the CDP hearing. Mr. Barnhill's address as stated on the petition was in Virginia.

Discussion

## I. General legal principles

### A. Summary judgment

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56")), the Court may grant summary judgment where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. The moving party (here, the Commissioner) bears the burden of showing that no genuine dispute of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (same standard under Rule 56). "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment." Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). To resolve the Commissioner's motion, we assume the facts as shown by Mr. Barnhill, the non-moving party, or as shown by the Commissioner and not disputed by Mr. Barnhill. Of course, if we deny the motion for summary judgment, then the disputed facts

may be subjects for trial, where we will not assume that Mr. Barnhill's allegations are true but will decide the facts on the basis of the evidence.

Two of the most significant of these assumed facts are (1) that Mr. Barnhill was not a person responsible to collect, account for, and pay over the employment taxes of Iron Cross and (2) that the IRS overstated the amounts of the TFRPs. The Commissioner maintains the contrary,[4] but for purposes of his motion--arguing that a liability challenge is precluded--we must assume that the challenge is a good one and that if we entertained it, petitioner would prevail. The Commissioner asks us to hold not just that section 6330(c)(2)(B) precludes non-meritorious liability challenges after the taxpayer has received Letter 1153 but that section 6330(c)(2)(B) precludes all such challenges, regardless of their merit. We therefore assume Mr. Barnhill's challenge is meritorious, and we decide whether it is nonetheless precluded.

---

[4]The Commissioner argues in his reply brief that "[i]t was reasonable for SO Harding to determine petitioner was a responsible and willful party under I.R.C. § 6672" and to determine "that there was no information in the record to dispute the amounts of the TFRP assessments"; and the reply describes the evidence that supposedly supports those determinations. This argument is at odds with the Commissioner's contention that the liability challenge was not properly before Appeals in the CDP hearing, and it is at odds with his contention that we can decide this case on summary judgment without addressing the liability issues. We therefore ignore this argument for purposes of this Opinion.

For purposes of the Commissioner's motion, we also assume that--as Mr. Barnhill has declared under penalty of perjury--he did not receive the Letter 5157. We do not cross our fingers behind our back as we state this assumed fact, though the Commissioner's papers seem to suggest that we should. His motion states: "While petitioner claims he did not receive the letter from Appeals officer Pollack scheduling the telephone conference, such letter was sent to the same address as the Letter 1153, which petitioner received." (Emphasis added.) His reply states: "The Appeals officer sent petitioner a Letter 5157 to his last known address (the address on the Letter 1153) scheduling a telephonic conference. Petitioner claims he did not receive the Letter 5157." (Emphasis added.) If the Commissioner wishes to raise doubt about that assertion, the forum for that effort would be a trial, not a motion under Rule 121 that asserts we need no trial.

B.     "Responsible person" penalty

An employer (here, Iron Cross) is required to withhold from an employee's wages and then pay over to the IRS both income tax, see sec. 3402, and the employee's share of Social Security and Medicare tax (i.e., Federal Insurance Contributions Act tax), see sec. 3102. Under section 7501(a), "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United

States"; consequently, these withheld taxes are referred to as "trust fund taxes".

One of the means Congress has enacted to ensure that these trust fund taxes are

paid over to the Government is section 6672, under which "the officers or

employees of the employer responsible for effectuating the collection and payment

of trust-fund taxes who willfully fail to do so are made personally liable to a

'penalty' equal to the amount of the delinquent taxes." Slodov v. United States,

436 U.S. 238, 244-245 (1978).  Section 6672(a) provides:

> SEC. 6672(a).  General Rule.--Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.  * * *

The liability at issue here is this penalty imposed by section 6672, which the IRS

assessed against Mr. Barnhill to recover Iron Cross's unpaid trust fund taxes.

Before the IRS may assess a section 6672 penalty, it must mail a

preliminary notice (here, the Letter 1153) "to an address as determined under

section 6212(b)", i.e., to the responsible person's last known address (or it may

deliver the notice in person) advising of the proposed assessment of a section 6672

penalty.[5]  Sec. 6672(b)(1); Bland v. Commissioner, T.C. Memo. 2012-84.

Notification by mail (or delivery in person) is sufficient to comply with the notice

requirement of section 6672(b)(1).  See Mason v. Commissioner, 132 T.C. at 322-

323.  "The Commissioner may issue notice and demand for and assess the penalty

60 days after notification under section 6672(b)(1), during which period the

taxpayer may appeal the proposed assessment and request an Appeals conference."

Bland v. Commissioner, slip op. at 14 (citing section 6672(b)(2)).  If the taxpayer

appeals and the Appeals officer determines that the taxpayer is liable for the

penalty as a responsible person, the matter is returned to the Commissioner for

assessment and collection.  The Commissioner initiates this collection process by

issuing a notice and demand for payment pursuant to section 6303.

C.     Collection review procedure

If a taxpayer fails to pay any Federal tax liability after notice and demand,

section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's

property; and section 6323(f) authorizes the IRS to file an NFTL to protect the

---

[5]A Letter 1153 constitutes the notice of proposed assessment of a
section 6672 responsible person penalty required by sec. 6672(b) as a prerequisite
to the IRS's imposition of the penalty.  See Rev. Proc. 2005-34, sec. 4.01, 2005-1
C.B. 1233, 1234 (setting forth the procedures for mailing that letter and for the
taxpayer's exercise of his right to either agree to or dispute the proposed
assessment within 60 days of the date on the letter).

Government's interests. However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) entitled "Due Process for Liens" and "Due Process for Collections", and the IRS must comply with those provisions before it can proceed with a levy or sustain the filing of an NFTL: The IRS must first issue a final notice of intent to levy and/or a notice of filing an NFTL and must notify the taxpayer of the right to an administrative hearing. Secs. 6320(a) and (b), 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request that administrative hearing, secs. 6320(a)(3)(B), (b)(1), 6330(a)(3)(B), (b)(1), which is called a "CDP hearing" and takes place before Appeals, secs. 6320(b)(1), 6330(b)(1). If the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court, secs. 6320(c), 6330(d)(1), as Mr. Barnhill has done.

At the agency-level CDP hearing, the Appeals officer must determine whether the proposed collection action may proceed. In the case of a notice of intent to levy, the procedures for the agency-level CDP hearing before Appeals are set forth in section 6330(c). The procedures for the agency-level hearing regarding an NFTL are the same as those set forth in section 6330(c) for a notice of intent to levy. Sec. 6320(c). The Appeals officer is required to take into consideration several things: First, the Appeals officer must verify that the

requirements of any applicable law or administrative procedure have been met by

IRS personnel.  Sec. 6330(c)(3)(A).  The attachment to the notice of determination

summarized the Appeals officer's verification of compliance with these

requirements.  In his opposition to the Commissioner's motion for summary

judgment, Mr. Barnhill makes no distinct contention about the verification

requirement.[6]

Second, the taxpayer may "raise at the hearing any relevant issue relating to

the unpaid tax or the * * * [collection action], including" challenges to the

appropriateness of the collection action and offers of collection alternatives.

Sec. 6330(c)(2)(A).  Again, Mr. Barnhill has not raised any issue in this regard.

Third, the Appeals officer must determine "whether any proposed collection

action balances the need for the efficient collection of taxes with the legitimate

concern of the person that any collection action be no more intrusive than

necessary."  Sec. 6330(c)(3)(C).  Mr. Barnhill has not made any contention about

this balancing.

Finally, the taxpayer may contest the existence and amount of the

underlying tax liability, but only if he did not receive a notice of deficiency or

---

[6]Mr. Barnhill does contend that the TFRP assessments were improper (because they were not preceded by a complete Appeals conference).

otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Mr. Barnhill attempted to challenge his underlying tax liability at the CDP hearing and continues that attempt in this case. We will address this contention below in part II.

### D.    Tax Court review

When Appeals issues its determination, the taxpayer may petition the Tax Court for review, pursuant to section 6330(d)(1), as Mr. Barnhill has done. Where the underlying tax liability is properly at issue, the taxpayer is entitled to de novo review. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). As to issues other than the underlying liability, we review the determination for abuse of discretion. Id. at 182. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

## II.    Analysis

The issues in Mr. Barnhill's petition and in his response to the Commissioner's motion for summary judgment all relate to his contention that he is not liable for the TFRPs, both because he was not a "responsible person" at Iron Cross and because the TFRPs were overstated in any event. The Commissioner

has moved the Court to hold that section 6330(c)(2)(B) precludes Mr. Barnhill from making such a contention because of his prior receipt of the Letter 1153.

A.    Prior "opportunity" under section 6330(c)(2)(B)

Mr. Barnhill cannot challenge his underlying liability for the TFRPs if he had a prior "opportunity to dispute such tax liability" under section 6330(c)(2)(B), which provides:

> The person may also raise at the [CDP] hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.  [Emphasis added.]

For purposes of section 6330(c)(2)(B), a prior conference with Appeals, offered before or after assessment, is an "opportunity" to dispute the underlying liability. See 26 C.F.R. sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs. (stating that a prior opportunity to dispute a liability "includes a prior opportunity for a conference with Appeals"); see also Iames v. Commissioner, 850 F.3d 160, 165-167 (4th Cir. 2017) (holding that a taxpayer's prior opportunity for a conference with Appeals occurred when he appeared at the pre-assessment hearing through counsel who disputed his liability and requested additional documents); Lander v. Commissioner, 154 T.C. __, __ (slip op. at 31-32) (Mar. 12, 2020) (holding that the taxpayers had a prior opportunity to challenge their underlying tax liability

before Appeals as part of a post-assessment audit reconsideration process when the Appeals officer "engaged with petitioners, took a fresh look at the record, conceded certain issues, and abated a significant portion of the tax previously assessed against them").

In Lewis v. Commissioner, 128 T.C. 48 (2007), we held that 26 C.F.R. section 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs., was a reasonable interpretation of section 6330(c)(2)(B). If a taxpayer has a non-judicial opportunity to challenge the underlying liability--i.e., an agency-level review hearing such as an Appeals conference--the taxpayer does "otherwise have an opportunity to dispute such tax liability" within the meaning of the statute. Lewis v. Commissioner, 128 T.C. at 61 ("Congress * * * intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court"). However, the regulation does not elaborate on the meaning of "a prior opportunity for a conference with Appeals". See 26 C.F.R. sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. At the time we decided Lewis, we reserved for another day the question of whether the mere offer of a conference with Appeals is sufficient to preclude the taxpayer's raising the issue of liability in a later CDP hearing. Lewis v. Commissioner, 128 T.C. at 61 n.9. Though we later held that a

taxpayer's failure to pursue the Appeals conference after receipt of the Letter 1153 constitutes such a forfeited opportunity (as we explain below), we have not previously addressed the question whether a taxpayer who pursues the Appeals conference but, through no fault of his own, is prevented from participating in it is also precluded under section 6330(c)(2)(B) from later raising a liability challenge in a CDP hearing.

In the specific context of CDP cases involving trust fund recovery penalties, this Court has held that a taxpayer has an "opportunity" to dispute his liability for a TFRP when he receives a Letter 1153. See Mason v. Commissioner, 132 T.C. at 317-318 (holding that merely mailing the Letter 1153 to the taxpayer's last known address is not sufficient to provide him with an opportunity to dispute the tax liability if he does not actually receive--and does not intentionally avoid receipt of--the Letter 1153). Thus, if the taxpayer receives a Letter 1153 and takes the resulting "opportunity to dispute" the underlying TFRP liability at the Appeals conference, then the taxpayer is precluded by section 6330(c)(2)(B) from challenging the underlying tax liability in a subsequent CDP hearing. The same is true of the taxpayer who receives a Letter 1153 but foregoes the opportunity to dispute liability by failing to timely request the Appeals conference. See Bletsas v. Commissioner, T.C. Memo. 2018-128, at *8-*9 (the taxpayer received a

Letter 1153 but took no further action), aff'd, 784 F. App'x 835 (2d Cir. 2019); Smith v. Commissioner, T.C. Memo. 2015-60, at *24 (the taxpayer received a Letter 1153 but failed to timely respond because his representative failed to send his response); Thompson v. Commissioner, T.C. Memo. 2012-87, slip op. at 7 (the taxpayer received a Letter 1153 but failed to submit a protest to Appeals disputing his liability for the trust fund recovery penalties); cf. Giaquinto v. Commissioner, T.C. Memo. 2013-150, at *14-*15 (the taxpayer who deliberately refused to accept delivery of a Letter 1153 had a prior opportunity to dispute his liability for TFRPs).[7]  In such circumstances the primary remaining purpose of the CDP hearing would be for the taxpayer and the settlement officer to discuss collection alternatives.  Mr. Barnhill did not seek a collection alternative; he seeks only review of the determination of his liability.

---

[7]The lack of opportunity for judicial review in the Tax Court after the opportunity for agency-level review upon receipt of the Letter 1153 does not severely prejudice the taxpayer because, as we have previously noted, "the section 6672 penalty is divisible, so that a taxpayer may litigate the penalty after having paid an amount corresponding to the tax withheld from a single employee".  See Weber v. Commissioner, 138 T.C. 348, 363 n.12 (2012) (citing Davis v. United States, 961 F.2d 867, 870 n.2 (9th Cir. 1992), and Bland v. Commissioner, T.C. Memo. 2012-84, slip op. at 22 n.13).  Thus, the taxpayer whose liability is upheld in the Letter 1153 proceeding before Appeals can make a small "token" payment towards the section 6672 penalty, file a refund claim with the IRS and, if the refund claim is denied, file a refund suit in a Federal District Court or the Court of Federal Claims.

B.     Prior "opportunity" when an Appeals conference is thwarted

1.     Letter vs. opportunity

Mr. Barnhill received the Letter 1153 inviting his appeal, and the

Commissioner contends that this ends the matter because, as he says in his motion:

> The Tax Court has held that receipt of a Letter 1153 constitutes an opportunity to dispute the taxpayer's liability.  Morgan v. Commissioner, T.C. Memo. 2011-290 (citing McClure v. Commissioner, T. C. Memo. 2008-136).  Solucorp Ltd. v. Commissioner of Internal Revenue, T.C. Memo. 2013-118 (May 2, 2013) (taxpayer precluded from disputing liability in CDP hearing because he had prior opportunity since he received Letter 1153, even if he chose not to file an appeal).

It is true that the clause "the receipt of a Letter 1153 constitutes an opportunity" is

shorthand that our opinions have sometimes used in this context--apparently first

in Morgan,[8] which so characterized the holding in McClure.  Thereafter, we have

repeated that same clause, often citing Morgan.[9]  However, it is clear that, strictly

---

[8]See Morgan v. Commissioner, T.C. Memo. 2011-290, *8 ("We have held that the receipt of a Letter 1153 constitutes an opportunity to dispute the taxpayer's liability.  McClure v. Commissioner, T.C. Memo. 2008-136").

[9]See Solucorp, Ltd. v. Commissioner, T.C. Memo. 2013-118, at *9 ("We have held that receipt of a Letter 1153 constitutes an opportunity to dispute the taxpayer's liability.  Morgan v. Commissioner, T.C. Memo. 2011-290, 2011 WL 6762929, at *3 (citing McClure v. Commissioner, T.C. Memo. 2008-136)"); Lengua v. Commissioner, T.C. Memo. 2013-197, at *8-*9 ("We have held that the receipt of Letter 1153 constitutes an opportunity to dispute the taxpayer's liability within the meaning of section 6330(c)(2)(B).  E.g., Solucorp, Ltd. v.

(continued...)

speaking, the Letter 1153 itself does not "constitute" the opportunity but rather enables, or makes available, or provides the means for,[10] or gives rise to the opportunity to challenge the TFRP liability. The "opportunity" to challenge a TFRP liability plainly takes place in the Appeals hearing; it is the hearing that "constitutes" the opportunity. In Morgan v. Commissioner, T.C. Memo. 2011-290, slip op. at 4-5, the taxpayer received the Letter 1153, filed a protest, and actually participated in the telephone conference with Appeals where he contested his liability. In contrast, someone who has received a Letter 1153 but is waiting for his scheduled hearing is still awaiting his opportunity and has not yet gotten it.

> 2. "Receive" vs. "have an opportunity"

Distinguishing the Letter 1153 from the "opportunity" that it occasions is consistent with the statutory text. Section 6330(c)(2)(B) provides two circumstances that bar a liability challenge--"the person [1] did not receive any

---

[9](...continued)
Commissioner, T.C. Memo. 2013-118; Morgan v. Commissioner, T.C. Memo. 2011-290").

[10]The imprecision of "constitutes an opportunity" is manifest in Solucorp, which in one place states that "receipt of a Letter 1153 constitutes an opportunity to dispute the taxpayer's liability", Solucorp, Ltd. v. Commissioner, at *9, but in another states more precisely that "Letter 1153 provides a taxpayer with * * * the means of protesting a proposed TFRP assessment administratively with the Commissioner", id. at *8.

statutory notice of deficiency for such tax liability or [2] did not otherwise have an opportunity to dispute such tax liability."  (Emphasis added).  In the income tax deficiency context, mere receipt (of the statutory notice of deficiency, the "SNOD") is the bar; in the subsequent CDP context, the taxpayer may challenge an income tax liability only if he "did not receive" the SNOD.  In his motion the Commissioner addresses the TFRP context as if it were identical--as if the statute said that the putative "responsible person" may challenge TFRP liability only if he "did not receive" Letter 1153; but it does not say that.  In the case of the TFRP liability (and other liabilities not subject to deficiency procedures), the taxpayer may challenge liability in the CDP hearing if he "did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B) (emphasis added).  Reading these subparagraphs in tandem suggests that the "opportunity" referenced in section 6330(c)(2)(B) is different from the receipt of the notice that triggers the opportunity.

In Iames v. Commissioner, 850 F.3d at 165, the U.S. Court of Appeals for the Fourth Circuit affirmed our holding in Lewis that the right to an administrative hearing in Appeals "counts as 'an opportunity to dispute [one's] tax liability'" within the meaning of section 6330(c)(2)(B); and as justification for that conclusion, the court reasoned that "taxpayers in these [Appeals] hearings have a

genuine chance to explain why they should not be held to the amount requested by the Commissioner." In Iames, the taxpayer "[p]lainly * * * enjoyed 'an opportunity to dispute [his] liability'" where he had a hearing before Appeals and appeared with counsel who contested his liability in the hearing. Iames v. Commissioner, 850 F.3d at 167. The Court of Appeals observed that only infrequently will liability properly be raised at a CDP hearing, stating: "Within this collection-focused framework, liability review plays no more than a minor part: Section 6330(c)(2)(B) catches taxpayers who would otherwise fall through the cracks." Id. at 166. We hold that a circumstance in which a taxpayer timely requests and, through no fault of his own, is denied the opportunity to participate in a hearing before Appeals is one such instance.

We have consistently held that where a taxpayer has taken all of the proper steps to avail himself of the opportunity to dispute his liability under section 6330(c)(2)(B), the statute requires that the taxpayer in fact realize that opportunity. See Perkins v. Commissioner, 129 T.C. 58, 66-67 (2007) (holding that an Appeals conference initiated before a request for CDP hearing but not yet concluded was not a prior opportunity to dispute the tax liability within the meaning of section 6330(c)(2)(B)); Mason v. Commissioner, 132 T.C. at 318-321 (holding that a Letter 1153 mailed to a taxpayer's last known address did not constitute a prior

opportunity to dispute the liability where it was not actually received and consequently no protest was filed); see also Romano-Murphy v. Commissioner, 152 T.C. 278, 305-313 (2019) (holding that Appeals abused its discretion by sustaining levy proceedings for a TFRP where the taxpayer's timely protest of penalty did not result in a final administrative determination by Appeals before assessment and observing that the taxpayer's protest therefore did not result in a prior opportunity to dispute the liability). Therefore, to determine whether a TFRP liability may be challenged in a CDP case, we look not simply to see whether the taxpayer "received" Letter 1153 but whether the taxpayer "ha[d] an opportunity" to dispute the TFRP proposed in the Letter 1153.

### 3. No-fault default vs. "last chance"

In the cases the Commissioner cites, each taxpayer received a Letter 1153 and then either prosecuted an unsuccessful appeal[11] or failed to do so.[12] None of

---

[11]See Iames v. Commissioner, 850 F.3d 160, 166-167 (4th Cir. 2017) ("He was represented by counsel, who filed his initial protest with the Office of Appeals. Prior to the hearing, the officer reviewed the revenue agent's report, the protest, and other documentation. The officer also conferred with a technical specialist. At the hearing, Iames's counsel actually contested Iames's liability and asked for additional documents. The officer followed up on this request, but Iames's counsel failed to respond"); Morgan v. Commissioner, slip op. at 6 ("Petitioner filed a protest to the proposed TFRPs, arguing that respondent had failed to collect the unpaid employment taxes"); McClure v. Commissioner, slip op. at 3 (quoting the NOD: "The taxpayer received the notice and submitted an

(continued...)

those cases involves a circumstance in which the taxpayer timely submitted his initial protest to Appeals but then, because he never received Appeals' follow-up in Letter 5157, was deprived of his opportunity to participate in an Appeals conference. In this case, however, on the facts before us for purposes of the Commissioner's motion, Mr. Barnhill timely submitted his initial protest but, through no fault of his own, was not informed of the scheduling of the conference and was thereby deprived of his Appeals conference and of the opportunity (which the Letter 1153 had signaled) to submit "additional information" in a later "stage" to dispute his liability.

In the CDP context, when Appeals sends its initial letter to the taxpayer scheduling a conference but receives no response, Appeals usually sends the taxpayer a "last chance" letter to enable him to complete the process. See, e.g.,

---

[11](...continued)
inadequate appeal. The taxpayer was afforded an opportunity to perfect his protest but failed to do so by the deadline of December 24, 2001"); id., slip op. at 8 ("Petitioner contested the liability in response to the Letter 1153, although his contest was unsuccessful. Apparently he failed to follow up with Appeals after being afforded the opportunity").

[12]Solucorp, Ltd. v. Commissioner, at *3 ("Petitioner did not respond to or contest the proposed assessment of TFRPs as set forth in the Letter 1153"); id. at *9 ("Petitioner does not allege that it did not receive the Letter 1153. Accordingly, we conclude that petitioner received the Letter 1153 and, therefore, had a prior opportunity to challenge the underlying liabilities").

Wong v. Commissioner, T.C. Memo. 2020-32, at *5.  But in Mr. Barnhill's TFRP

case, when Appeals received no response to its initial scheduling letter

(Letter 5157), Appeals simply closed the case a mere two days later and instructed

Collection to assess the penalties.  There may be good and sufficient reason for

this brisk efficiency, but we cannot say that it gave Mr. Barnhill an "opportunity"

to dispute his liability.

The Commissioner urges us to hold that Appeals' actions were enough to

constitute an opportunity, arguing:

> Neither the plain language of I.R.C. § 6330(c)(2)(B) nor the
> applicable Treasury regulations and case law require that the taxpayer
> exercise his appeal rights or that a taxpayer actually receive a
> conference (whether telephonic or in-person) to constitute a "prior
> opportunity."

This is not the first time that the Commissioner has made this argument before the

Tax Court.  See Smith v. Commissioner, at *24 n.8.  In Smith, though we declined

to address this argument (since to do so was unnecessary, as Mr. Smith had failed

to file a timely protest), we observed:

> [The Commissioner argues] that once a person has received a
> Letter 1153, that person should be considered to have had an
> opportunity to dispute the trust-fund-recovery penalty liabilities even
> if the person actually timely protests the Letter 1153 and the Office of
> Appeals fails to consider the protest.  If correct, the argument would
> mean that it would not have mattered even if petitioner had timely

administratively appealed the Letter 1153 to the Office of Appeals, but respondent arbitrarily refused to hear his appeal. * * *

Id. at *24-*25 (fn. ref. omitted). The facts before us may not suggest a deliberate, arbitrary refusal by Appeals to hear Mr. Barnhill's appeal, but a taxpayer who did suffer such a refusal could hardly have received any less of "an opportunity to dispute * * * [his] tax liability" for the TFRP at issue within the meaning of section 6330(c)(2)(B) than Mr. Barnhill did. As we explain above in part II.B.2., receipt of the Letter 1153 is required not for the sake of receipt itself but rather for the opportunity it is supposed to deliver.

4. "Harmless error" in the TFRP case?

The Commissioner further argues that "even if [in the TFRP case] a hearing was required (and respondent is not conceding this point), any error would be harmless error, as the Appeals officer considered petitioner's arguments/claims [challenging his TFRP liability] prior to rendering her decision." The harmless error rule "is to be used only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.'" Romano-Murphy v. Commissioner, 152 T.C. at 311 (quoting U.S. Steel Corp. v. EPA, 595 F.2d 207, 215 (5th Cir. 1979)).

The Appeals officer may have considered Mr. Barnhill's initial (and only) appeal, but we cannot conclude that her subsequent action involved only harmless error. See, e.g., id. at 312-313 (holding that the harmless error rule does not apply where Appeals commits an abuse of discretion in upholding collection action for a TFRP where such action was not preceded by a final administrative determination of the assessment and may have affected the collection procedure for the penalty); cf. Perkins v. Commissioner, 129 T.C. at 70-71 (holding that harmless error occurred where "the arguments that petitioner has raised against the collection action are all frivolous and groundless"). Rather, Mr. Barnhill had filed his appeal in response to instructions that indicated a process with multiple "stage[s]" but (we assume) did not receive the Letter 5157 and Publication 4227 explaining the Appeals process. The Letter 5157 indicated that indeed the process should have allowed, before the Appeals conference, for "additional information" to be submitted; and then it should have allowed, at the conference, for a "discuss[ion]" of "possible settlement of your case", of the Appeals officer's "preliminary findings", and of "facts, arguments, and whether the law supports your position", and should have allowed Mr. Barnhill to "present new information or raise new issues". Even if the Appeals officer conscientiously considered Mr. Barnhill's

initial appeal, we cannot say that the omission of all that potential subsequent activity in the TFRP process was harmless.[13]

Consequently, on the facts we must assume here, Mr. Barnhill's TFRP appeal was truncated and incomplete, and it did not constitute, for purposes of section 6330(c)(2)(B), an "opportunity to dispute such tax liability." As a result, we cannot, in the current procedural context, rule out the possibility that Appeals abused its discretion in the subsequent CDP hearing when it barred Mr. Barnhill's liability challenge.

## Conclusion

We will therefore deny the Commissioner's motion for summary judgment, and to that end--

<u>An appropriate order will be issued</u>.

---

[13]Similarly, any defect resulting from barring Mr. Barnhill's liability challenge in the CDP hearing is not cured by Appeals' consideration--outside of the CDP hearing--of Mr. Barnhill's offer-in-compromise based on doubt as to liability. By Appeals' lights that was an appropriate manner in which Appeals could consider Mr. Barnhill's liability challenge; but if, as we hold for purposes of denying summary judgment, he was entitled to challenge his liability in the CDP hearing (subject thereafter to judicial review under section 6330(d)), then relegating the liability challenge to the non-CDP context was an abuse of discretion.