23-296(L)
*Besicorp v. Commissioner of Internal Revenue*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023

(Argued: February 5, 2024     Decided: June 29, 2026)

Docket Nos. 23-296(L), 23-299 (Con), 23-302 (Con),
23-321 (Con), 23-353 (Con), 23-359 (Con)

BESICORP GROUP, INC., DAY STORES, INC., HUMBOLDT SHELBY HOLDING
CORPORATION, THE MARKELL COMPANY, INC., VANCE FINANCE AND
HOLDING CORPORATION, SEASHORE BROADCASTING CORPORATION,

*Petitioners-Appellants,*

–v.–

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

B e f o r e :

LEVAL, CARNEY, and SULLIVAN, *Circuit Judges.*

Six Taxpayers appeal from the Tax Court's orders sustaining federal tax liens and proposed levies by the Internal Revenue Service ("IRS") for collection of the Taxpayers' outstanding tax liabilities. In earlier proceedings not challenged here, the Tax Court adjudicated the Taxpayers' liabilities, which comprised many millions of dollars in unpaid taxes, penalties, and accrued interest. The Commissioner of Internal Revenue

then sought to collect the Taxpayers' liabilities through certain liens and levies on their property. Each Taxpayer invoked its right to have a collection due process ("CDP") hearing conducted by the Appeals Office within the IRS. The Appeals Officer in each case sustained the Commissioner's authority to collect the Taxpayers' liabilities through liens and levies on their property. On appeal, the Tax Court upheld the Appeals Office's determinations.

In these consolidated appeals, the Taxpayers argue that, in upholding the Commissioner's authority to collect the assessed liabilities by liens and levies, the Tax Court erroneously concluded that the Appeals Officer "verif[ied]" that "the requirements of any applicable law or administrative procedure have been met" in accordance with 26 U.S.C. § 6330(c)(1), a necessary predicate to the Commissioner's assertion of liens and levies. The Appeals Officer's rulings were incorrect, they say, because he failed "to obtain verification from the Secretary," *id.*, that the penalties imposed on the Taxpayers received written supervisory approval, as required by 26 U.S.C. § 6751(b)(1). In opposition, the Commissioner maintains primarily that the supervisory approval called for under Section 6751(b)(1) is not an "applicable" requirement covered by Section 6330(c)(1) in light of prior liability and penalty determinations against the Taxpayers, which he argues preclude the current challenges under res judicata.

We conclude that the Taxpayers are correct. The verification obligation imposed on the Appeals Officer by Section 6330(c)(1) encompasses the supervisory approval requirement imposed by Section 6751(b)(1). To proceed with liens and levies, the government was required to show that the Appeals Officer verified that the penalties imposed on the Taxpayers received the required written supervisory approval. The failure to do so did not invalidate the penalties or overall tax liability owed by the Taxpayers, but it did invalidate the Appeals Officer's determination that the liens were proper and the Taxpayers' properties could be levied. Accordingly, we **REVERSE** the relevant portions of the Tax Court's orders, and we remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

———————

PETER B. SIEGAL (Jasper G. Taylor III, Richard L. Hunn, Norton Rose Fulbright US LLP, Houston, TX, *on the brief*), Norton Rose Fulbright US LLP, Washington, DC, *for Petitioners-Appellants*.

2

ROBERT J. BRANMAN (David A. Hubbert, Jacob Earl Christensen, *on the brief*), Department of Justice, Tax Division, Washington, DC, *for Respondent-Appellee*.

CARNEY, *Circuit Judge*:

This case requires us to interpret provisions of the Internal Revenue Code ("I.R.C." or "Code"), 26 U.S.C. §§ 6651 *et seq.*, concerning the government's ability to collect unpaid tax liabilities through liens and levies authorized by the Code. Petitioners-Appellants (the "Taxpayers") are sophisticated entities that participated in what the Internal Revenue Service (the "IRS" or "Service") concluded were tax shelter transactions designed to avoid the payment of taxes. The Service notified the Taxpayers that they owed many millions of dollars in unpaid taxes, penalties, and accrued interest, and the Tax Court adjudicated these liabilities in earlier proceedings not challenged here. The Commissioner of Internal Revenue (the "Commissioner") then sought to collect these liabilities through the Code-authorized tax liens and levies on the Taxpayers' properties.

Each Taxpayer invoked its right to have a collection due process ("CDP") hearing conducted by the Service's Appeals Office in connection with the Commissioner's issuance of Notices of Federal Tax Liens and Notices of Intent to Levy. The Appeals Officer in each case sustained the liens and proposed levies, and in doing so stated that he verified the Service's compliance with all applicable laws and regulations in assessing the liabilities. The Tax Court upheld the Appeals Office's determinations.

Now, in consolidated appeals to our Court, the Taxpayers argue that the Tax Court erred in concluding that the Appeals Officer "obtain[ed] verification" that "the requirements of any applicable law or administrative procedure have been met," as required by Section 6330(c)(1) of the Code. In particular, the Taxpayers contend that the

3

Appeals Officer failed to verify, and the Service failed to show, that the assessed penalties received the written supervisory approval mandated by Section 6751(b)(1).

The Commissioner does not dispute that the Appeals Officer failed to verify that the assessed penalties received the requisite supervisory approval. Nor does the Commissioner contend that the required supervisory approvals were obtained before the imposition of penalties. Instead the Commissioner offers several responses: first, that res judicata bars the Taxpayers' argument; next, that the written supervisory approval required by Section 6751(b)(1) is not an "applicable" requirement where, as here, the penalty was adjudicated in an earlier challenge; and finally, that, despite the literal language of Section 6330(c)(1), requiring the Appeals Officer to verify compliance with the supervisory approval mandate in a CDP hearing serves no bona fide purpose and therefore, notwithstanding the literal language of Section 6330(c)(1), the Appeals Officer's failure should be treated as harmless error.

We interpret these provisions literally, as we are required to do, and hold that Section 6751(b)'s supervisory approval requirement is a "requirement[] of . . . applicable law or administrative procedure" encompassed by Section 6330(c)(1). The Appeals Officer's failure to verify that the penalties imposed on the Taxpayers received the requisite supervisory approval therefore invalidated the Appeals Office's approval of the liens and proposed levies. Accordingly, we REVERSE those portions of the Tax Court's orders that find that the verification requirement did not apply to the supervisory approval requirement and that the liens and proposed levies on the Taxpayers' property were proper. We REMAND for further proceedings consistent with this opinion.[1]

---

[1] Judge Sullivan joins in all parts of this opinion except the final paragraph of Section I of the Discussion, which he sees as unnecessary to our holding.

**BACKGROUND**

**I.     Statutory framework**

  A. <u>Assessment of tax liability and related penalties</u>

The United States taxing system largely relies on "self-reporting." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). Taxpayers file tax returns, on which they compute their net income and taxes, and pay the amount of tax indicated on said return. Only a fraction of tax returns are audited by the Service. If, after review of a taxpayer's return, the Service determines that the taxpayer owes more tax than reported, it calculates a related "deficiency": roughly speaking, the amount by which the tax reported is less than the tax in fact due. I.R.C. § 6211(a).[2] It then sends a "notice of such deficiency" to the taxpayer, announcing the amount due and related information. *Id.* §§ 6212(a), 7522(a).

In its notice of deficiency, and in addition to the amounts presented as accrued interest due on the tax deficiency, the IRS may also assert claims for related penalties, identifying the authority for the penalty imposed. *See id.* §§ 6651 *et seq.* Penalties can be severe: for example, with respect to Besicorp, one Taxpayer in this appeal, the Service assessed a roughly $20 million penalty on a $50 million deficiency for its accuracy-related "gross valuation misstatements." Joint App'x at 50; *see* I.R.C. § 6662(h).

---

[2] More specifically:

> [T]he term "deficiency" means the amount by which the tax imposed . . . exceeds the excess of . . . (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return . . ., plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over — (2) the amount of rebates . . . made.

I.R.C. § 6211(a). This definition is subject to certain additional rules, as set forth in Section 6211(b). Those additional rules do not bear on our discussion.

The Code imposes procedural requirements on the Service before it can impose penalties. One such requirement is found in Section 6751(b)(1), entitled "Approval of assessment."[3] It provides:

> No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

I.R.C. § 6751(b)(1). We refer to this as the "supervisory approval" requirement, and it is key here.

A taxpayer who wishes to contest the deficiency or penalty amounts stated in a notice of deficiency may file a petition for a redetermination with the Tax Court within 90 days from the date of the notice's issuance. *See id.* §§ 6213, 6214.[4] If the Tax Court issues a final decision upholding the stated deficiency and penalties, or if no timely petition for redetermination is filed, the Service may then take the pivotal step of "assess[ing]" the amount due by "recording the liability of the taxpayer in the office of the Secretary." *Id.* § 6203; *see id.* §§ 6213(a), 6215(a). The assessment "fix[es] the amount payable." Michael I. Saltzman & Leslie Book, IRS Prac. & Proc. ¶ 10.01[1] (2025) (citing I.R.C. § 6203). The Service must then notify the taxpayer of the unpaid tax liability "as soon as practicable, and within 60 days" of the assessment, and demand payment. I.R.C. § 6303(a).

---

[3] Section 6751 is entitled "Procedural requirements." I.R.C. § 6751. It explains that its provisions use the word "penalty" to mean "any addition to tax or any additional amount." *Id.* § 6751(c). Subsection (a) requires the Service to inform the taxpayer subject to a penalty the source of its authority to impose the penalty and "a computation of the penalty." *Id.* § 6751(a).

[4] Alternatively, the taxpayer may pay the amount of deficiency and then bring suit for a refund in U.S. District Court or the Court of Federal Claims. *See* 14 Mertens Law of Fed. Income Tax'n § 49C:1 (July 2025 Update).

B.      Collection of tax debt

The Service may then take various steps toward collection. Notably, if after assessment and demand the taxpayer "neglects or refuses" to pay the outstanding liability, the Code provides that "the amount. . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." *Id.* § 6321. The Service may also record a federal tax lien on the taxpayer's property in the appropriate jurisdiction. *See id.* § 6323(f); *see generally* Saltzman & Book, *supra*, at ¶ 14A.04.[5] More intrusively, it may levy (that is, seize) the taxpayer's property and sell it to satisfy the tax debt. I.R.C. § 6331.

In 1998, complaints of abusive collection tactics by the Service in its use of these tools (and other concerns) led to the passage of the Internal Revenue Service Restructuring and Reform Act of 1998 (the "Reform Act"), Pub. L. No. 105–206, 112 Stat. 685, establishing new procedural protections for taxpayers facing IRS collection actions. *See Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 779 (7th Cir. 2017); *Iames v. Comm'r*, 850 F.3d 160, 162 (4th Cir. 2017). Paramount here, the Reform Act afforded a taxpayer subject to collection actions two separate rights: the right to a hearing *after* receiving a Notice of Federal Tax Lien, *see* I.R.C. § 6320, and the right to a hearing *before* the IRS levies on its property, *see id.* § 6330. These are the CDP hearings we have referred to above.[6]

---

[5] If it does so, the Service must "notify in writing the person . . . of the filing of a notice of lien" and provide post-recording process to the taxpayer who wishes to contest the lien or any element of it. I.R.C. § 6320.

[6] Section 6330(c)(1), the focus of our discussion here, is entitled "Requirement of investigation," and provides in full, "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." I.R.C. § 6330(c)(1). The Code section concerning the Service's imposition of liens, Section

Officers within the Internal Revenue Service Independent Office of Appeals ("Appeals Office") conduct the CDP hearings prescribed by the Reform Act.[7] *Id.* § 6320(b)(1). Appeals Officers (also known as Settlement Officers) are charged with "impartially resolving disputes between the government and taxpayers," *Our Country Home Enters.*, 855 F.3d at 779, while advocating for neither the taxpayer nor the Service. To preserve that impartiality, the Appeals Officer conducting the CDP hearing must have had "no prior involvement with respect to the unpaid tax" and is subject to other procedural constraints. I.R.C. §§ 6320(b)(3), 6330(b)(3).

At the most general level, the Appeals Officer is charged with determining (i) whether a Notice of Federal Tax Lien should remain in effect, and (ii) if a Notice of Intent to Levy is at issue, whether the IRS may proceed with the proposed levy. *See id.* § 6320(b)(1) (liens); *id.* § 6330(b)(1) (levies). Before making those determinations, the Appeals Officer must permit the taxpayer "[to] raise . . . any relevant issue relating to the unpaid tax," subject to certain limitations.[8] *Id.* § 6330(c)(2). Further, the Appeals Officer must consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection

---

6320, incorporates the provisions concerning levies into those governing imposition of liens. *Id.* § 6320(c).

The key difference in the CDP hearing aspect of the two sections is that the taxpayer's opportunity for a CDP hearing *follows* the Service's imposition of a federal tax lien, whereas it comes *before* the Service levies on a taxpayer's property. But for both liens and levies, the verification requirement set out in Section 6330(c)(1) applies: the Appeals Officer conducting the CDP hearing shall verify the Service's compliance with "any applicable law."

[7] Before 2019, this office was simply called the Office of Appeals. *Ruhaak v. Comm'r*, 157 T.C. 103, 104 n.2 (2021).

[8] The taxpayer may raise "challenges to the existence or amount of the underlying tax liability" only if it "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." I.R.C. § 6330(c)(2)(B).

action be no more intrusive than necessary." *Id.* § 6330(c)(3)(C). Most salient here, the Appeals Officer must also "obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met." *Id.* § 6330(c)(1). Only after satisfying these requirements and considering the arguments and evidence presented by the Service and the taxpayer may the Appeals Officer issue a "Notice of Determination" upholding or rejecting the lien or proposed levy.

CDP proceedings are subject to few formalities and are not the full-blown civil trials one might imagine. As one of our sister Circuits has observed, "calling the [CDP] proceeding a 'hearing' is somewhat misleading in that there is no obligation [for the Appeals Office] to conduct a face-to-face hearing, no formal discovery, no requirement for either testimony or cross-examination, and no transcript." *Our Country Home Enters.*, 855 F.3d at 780 (internal quotation marks omitted). A CDP hearing offers a taxpayer more than it had before the 1998 Reform Act, but in practice the CDP hearing can be "nothing more than an opportunity for an informal oral or written conversation with the IRS before [it] must pay a tax." *Id.*

Even so, an Appeals Officer's failure to comply with the procedural requirements set forth in the statute can be consequential, and the Tax Court, which considers appeals from CDP hearings, may overturn a determination when it identifies such a failure. *See* I.R.C. § 6330(d)(1). In particular, if on review it is established that the Appeals Officer has not "verif[ied]" the Service's compliance with "an[] applicable law or administrative procedure," *id.* § 6330(c)(1), the Tax Court may strike the proposed lien or levy. *See, e.g.*, *Pfetzer v. Comm'r*, 122 T.C.M. (CCH) 395, 2021 WL 6143712, at *5 (2008) (concluding that the Appeals Office abused its discretion in sustaining a Notice of Federal Tax Lien when the Appeals Officer "ha[d] not fulfilled her duty of verification under section 6330(c)(1)"); *see generally Hoyle v. Comm'r*, 131 T.C. 197 (2008) ("*Hoyle I*").

9

## II.     Factual and procedural history

Unless otherwise noted, the facts set forth below are drawn from the Tax Court record and are undisputed. The facts and procedural history in all six of these consolidated appeals are materially identical for purposes of our decision, as the parties acknowledge. Taxpayers' Br. at 4–5; Comm'r Br. at 4.

From 1999 to 2003, the Taxpayers—Besicorp Group, Day Stores, Humboldt Shelby Holding Corporation, the Markell Company, Vance Finance and Holding Corporation, and Seashore Broadcasting Corporation—each participated in what the IRS concluded were "intermediary tax shelter transactions designed to avoid the payment of taxes." Joint App'x at 36 (Besicorp Notice of Determination dated Feb. 1, 2017).[9] In the underlying liability proceedings, the IRS determined that each Taxpayer was liable for deficiencies and penalties, and, on petitions for review of those determinations, the Tax Court upheld the noticed deficiencies and penalties.[10]. No Taxpayer appears to have litigated any issue related to Section 6751's supervisory approval requirement in those earlier proceedings.

In the years after the Taxpayers' liabilities for tax, penalties, and interest were affirmed, the IRS formally assessed the liabilities in accordance with Section 6215(a). It sent each Taxpayer a notice of deficiency and demanded payment. The Taxpayers failed

---

[9] For brevity, we quote only from the materials filed in the appeal by Besicorp.

[10] Of the six Taxpayers, only one—Humboldt Shelby Holding Corporation—appealed the Tax Court's decision on the liability ruling to this Court. On *de novo* review of that decision, we affirmed. *See Humboldt Shelby Holding Corp. & Subs. v. Comm'r*, 606 F. App'x 20, 21 (2d Cir. 2015) (affirming 107 T.C.M. (CCH) 1242, 2014 WL 1041485 (T.C. 2014)). Four of the other Taxpayers agreed to the identified tax liability in "stipulated decision[s], entered in the United States Tax Court." Joint App'x at 36. The final Taxpayer, Vance Finance, does not appear to have stipulated to the Tax Court's liability decision, but it did not appeal the decision and "did not dispute the liability" in its CDP hearing. Joint App'x at 544.

to pay. Accordingly, the IRS filed liens and sent each Taxpayer Notices of Federal Tax Liens and Notices of Intent to Levy. By the time the Service sent Notices of Intent to Levy to the Taxpayers, in late 2014 through early 2016, the Taxpayers owed accumulated amounts ranging from just under $13 million (for Day Stores) to almost $200 million (for Besicorp). These notices also informed each Taxpayer of the statutory right to a CDP hearing in connection with the liens and levies.

In response, each Taxpayer made a token "offer in compromise" to the Service, proposing to settle its liabilities for $1,000. In connection with those offers in compromise, each represented to the Service that it was an "inactive corporation" without assets, checking a box that expressed "[d]oubt as to [c]ollectability," and explaining "I have insufficient assets and income to pay the full amount." Joint App'x at 59, 71.[11] The Taxpayers then each requested, and received, a CDP hearing. Each of these hearings was conducted by the same Appeals Officer within the Appeals Office.

In his concluding Notices of Determination, which announced the results of the CDP hearings, the Appeals Officer sustained the IRS's liens and proposed levy actions; rejected the offers in compromise, primarily on the ground that accepting the offers "would be detrimental to the interests of fair tax administration," Joint App'x at 37; and upheld the assessed liabilities and penalties.

In each Notice of Determination, the Appeals Officer wrote:

I . . . *verified the requirements of any applicable law or administrative procedure were met*. IRS records confirmed the proper issuance of the notice and

---

[11] The proposed offers in compromise also requested that the IRS "accept the offer amount listed in this offer application as payment in satisfaction of any claims by the IRS against any person, as an alter ego, agent, nominee, transferee, or otherwise, for my outstanding tax debt." *See* Joint App'x at 73.

demand, Notice of Intent to Levy, Notice of Federal Tax Lien (NFTL) filing and notice of a right to a [CDP] hearing.

An assessment was properly made for each tax and period listed on the CDP notice.

Notice and demand for payment was mailed to your last known address.

There was a balance due when the Notice of Intent to Levy was issued and when the NFTL filing was requested.

I had no prior involvement with respect to the specific tax periods either in Appeals or Compliance.

I reviewed the Collection file, IRS records and information you provided. *My review confirmed that the IRS followed all legal and procedural requirements*, and the actions taken or proposed were appropriate under the circumstances.

*Id.* at 32–33 (emphases added). The Notices of Determination made no express mention of Section 6751(b)'s supervisory approval requirement.

The Taxpayers then each sought review in the Tax Court. They were able to obtain some discovery in these proceedings, and requested "all documents on which the Appeals officer based his conclusion that 'the requirements of any applicable law or administrative procedure were met,' including but not limited to the requirements of section 6751(b)." Joint App'x at 91 ¶ 2(w). The Service produced no documents in response to this request. Rather, as quoted by the Taxpayers, the Service took the position that "[b]ecause the applicability of the penalty at issue in this CDP case had already been conclusively determined by the Tax Court . . . , and the Tax Court's prior, final decision ha[d] res judicata effect, no further verification of compliance with the requirements of [Section] 6751(b) was required." *Id.* ¶ 2(x) (internal quotation marks omitted).

In all six cases, the Commissioner then moved the Tax Court for summary judgment. The Taxpayers opposed, asserting that the Appeals Officer had failed in his

duty to verify the Service's compliance with Section 6751(b)(1) in assessing penalties. They also claimed he had abused his discretion by rejecting the Taxpayers' offers in compromise.

The Special Trial Judge assigned to the cases by the Tax Court granted in part and denied in part the Commissioner's motions in an unpublished order. She found no abuse of discretion in the Appeals Officer's rejection of the offers in compromise. But she also concluded that the Appeals Officer's "failure to verify [the] IRS'[s] compliance with section 6751(b) was a failure to meet the verification requirement of section 6630(c)(1) [sic: 6330(c)(1)] and therefore was an abuse of discretion." Joint App'x at 115. She thus denied the Service summary judgment in part, with the effect that, although the Taxpayers' penalty assessment and overall tax liability were unaffected, the Service's liens and proposed levies could not be enforced as to the penalties.

Only weeks later, however, in a published Tax Court Memorandum, a Tax Court Judge reached the opposite conclusion about the requirements of Section 6330 and Section 6751(b). *See Warner Enters., Inc. v. Comm'r*, 124 T.C.M. (CCH) 98, 2022 WL 3584090 (T.C. 2022), *appeal filed* No. 24-611 (2d Cir. 2024).[12] In *Warner Enterprises*, the Tax Court held that "where the Court previously adjudicated and entered a decision determining the applicability of penalties," a CDP Appeals Officer need not verify compliance with the supervisory approval requirement of Section 6751(b)(1). *Id.* at *4. Instead, it ruled, the Appeals Officer "merely needs to determine that the penalty was properly assessed." *Id.* "To permit otherwise," it reasoned, "would place the administrative agency in review of the Court." *Id.* And because no authority "would

---

[12] The appeal in *Warner Enterprises* has been held in abeyance pending our Court's decision in the consolidated *Besicorp* cases. Order Granting Unopposed Motion to Stay Appeal, *Warner Enters., Inc.*, No. 24-611 (2d Cir. Mar. 28, 2024), Dkt. No. 18.

permit the Court to set aside the prior—and now final—decision" on the underlying liability, "verification of IRS compliance with [S]ection 6751(b) at this stage would serve no purpose." *Id.* at *5. In short, the Tax Court in *Warner Enterprises* squarely rejected the Taxpayers' argument that Section 6330(c)(1)'s verification requirement "includes confirmation of whether the supervisory approval requirement of section 6751(b) has been met." *Id.* at *4.

Soon after *Warner Enterprises* issued, the Special Trial Judge assigned these Taxpayers' cases vacated her earlier decisions, and, in a new set of Orders and Decisions, granted in full the Commissioner's motions for summary judgment. Citing *Warner Enterprises*, the judge now accepted the Commissioner's argument that "compliance with section 6751(b) is not part of the verification requirements of section 6330(c)(1) because th[e] [Tax] Court . . . already conclusively determined the applicability of penalties." Joint App'x at 125. She ruled that the Appeals Officer in the case at bar complied with the requirements of Section 6330(c)(1), on the ground that, as in *Warner Enterprises*, "'the [Tax] Court previously adjudicated and entered a decision determining the applicability of penalties,'" so that the Appeals Officer "'merely need[ed] to determine that the penalty was properly assessed.'" *Id.* (quoting *Warner Enters., Inc.*, 2022 WL 3584090, at *4).

The Taxpayers appealed to our Court, challenging only this part of the Tax Court's decision. Taxpayers' Br. at 7–8. The Taxpayers do not challenge the portions of the Tax Court's orders affirming the Appeals Officer's rejection of the Taxpayers' offers in compromise, and do not challenge the IRS's assessments of their very large tax liabilities, including penalties. Rather, they contend that because the Service did not show that the Appeals Officer satisfied the verification requirements of Section 6330(c)(1) with respect to the supervisory approval requirement of Section 6751(b)(1), it may not use liens and levies to collect the amounts of the penalties that are owed.

14

On appeal, we consolidated the six cases.

## DISCUSSION

We review *de novo* the Tax Court's grant of summary judgment. *Williams v. Comm'r*, 718 F.3d 89, 91 (2d Cir. 2013). In doing so, we "must also review the decision by the Appeals Office." *Id.* We review the Appeals Office's determinations for abuse of discretion. *Id.* at 92.[13]

The Taxpayers argue that Section 6330(c)(1) obligates the Appeals Officer in every CDP hearing to verify the Service's compliance with Section 6751(b)(1)—that is, its satisfaction of the basic requirement that no penalty be assessed "unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." I.R.C. § 6751(b)(1). Failure to do so, they urge, prevents the Service from using the federal tax liens authorized by Section 6323 and the levies authorized by Section 6331 to collect the assessed liabilities.

For his part, the Commissioner maintains that where, as here, the underlying liabilities have already been conclusively determined in earlier IRS proceedings, verification that supervisory approval was obtained would "serve[] no bona fide purpose" at the CDP hearing stage. Comm'r Br. at 33. And so, he argues, the supervisory approval requirement is not correctly understood to be an "applicable law or administrative procedure" under Section 6330(c)(1). *Id.* (quoting I.R.C. § 6330(c)(1)).

---

[13] As relevant here, Section 7482 of the Code generally gives the Courts of Appeals "exclusive jurisdiction to review the decisions of the Tax Court, . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury," subject only to further review by the Supreme Court upon certiorari. I.R.C. § 7482(a)(1). On such review, our Court has the power "to affirm or, if the decision of the Tax Court is not in accordance with law, to modify or to reverse the decision of the Tax Court, with or without remanding the case for a rehearing, as justice may require." *Id.* § 7482(c)(1).

He urges that, in such cases, the Appeals Officer is under no obligation at all to verify that the Service obtained supervisory approval. All challenges related to the penalties that required supervisory approval have been settled in the earlier proceedings, he maintains, and the related verification requirement has become meaningless.

For the reasons set forth below, we cannot agree.

**I.    Section 6330(c)(1) requires the Appeals Officer in a CDP hearing to verify that "the requirements of any applicable law or administrative procedure" have been met without regard to the stage of the Service's proceedings.**

We begin, as always, with the text of the statute whose meaning the parties dispute. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023).

Section 6330(c)(1) states that it imposes a "[r]equirement of investigation" on the Appeals Officer conducting a CDP hearing. In language as unmistakably mandatory as it is unmistakably broad, it provides: "The appeals officer *shall* at the hearing obtain verification from the Secretary that the requirements of *any* applicable law or administrative procedure have been met." I.R.C. § 6330(c)(1) (emphases added).

The Code does not specify which requirements of law or administrative procedure must be verified by the Appeals Officer at the hearing. But the Tax Court has held that the "basic" requirements for which an Appeals Officer must obtain Section 6330(c)(1) verification, *Dinino v. Comm'r*, 98 T.C.M. (CCH) 559, 2009 WL 4723652, at *7 (T.C. 2009), include at least these four:

(i) that a valid assessment was made;

(ii) that notice of the assessment was given, and demand for payment made, to the taxpayer;

(iii) that the taxpayer failed to pay; and

16

(iv) that the IRS issued a notice of the recorded lien or notice of intent to

levy, together with a notice of the taxpayer's right to a hearing.

*See Ron Lykins, Inc. v. Comm'r*, 133 T.C. 87, 97 (2009).

Section 6330(c)(1)'s verification mandate has been held to apply to other legal requirements as well: for example, the Tax Court has ruled that the Appeals Officer must verify that before the deficiency was assessed, the notice of deficiency was mailed to the taxpayer at its last known address. *Hoyle I*, 131 T.C. at 200 (observing that "[o]ne requirement of applicable law" subject to Section 6330(c)(1) verification is the Commissioner's obligation to "duly mail[] a notice of deficiency" to a taxpayer).

As we have said, the question in the cases before us now is whether Section 6751(b)(1)'s supervisory approval requirement is a "requirement[] of any applicable law or administrative procedure" that is subject to Section 6330(c)(1)'s verification mandate. I.R.C. § 6330(c)(1). Looking to the literal meaning of the statutory language, we think the presumptive answer to that question has to be "yes." Section 6330(c)(1) applies to requirements set forth in "any" applicable law or administrative procedure. *Id.* The Supreme Court has underscored that "the word 'any' . . . has an 'expansive meaning.'" *Republic of Iraq v. Beaty*, 556 U.S. 848, 856 (2009) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Current dictionaries tell us the same, with one defining "any" as "one or some indiscriminately of whatever kind." *Any*, *Merriam-Webster's Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/any (last visited Dec. 8, 2025).

And Section 6751(b)(1) is equally plain: "*No penalty under this title shall be assessed unless* the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." I.R.C. § 6751(b)(1) (emphasis

added). We find it difficult to say that, literally read, this statute is not an "applicable law" as to any case in which penalties are imposed.[14]

The Commissioner contends, however, that the Appeals Officer's obligation to verify that supervisory approval for penalties was obtained falls away when the taxpayer's liability for the deficiency, penalties, and interest—the basis for the Service's lien and desired levies—has already been "conclusively determined" by the Service either in prior proceedings or in a stipulation by the taxpayer. Comm'r Br. at 24. He relies on the word "applicable" in Section 6330(c)(1) to support his reading, and presses the view that, "[a]t the time of the CDP hearings, . . . [Section] 6751(b)(1)'s supervisory approval requirement was no longer 'applicable' because each taxpayer's liability for the penalties had already been conclusively determined by the Tax Court, [and] the appeals officer was bound by those determinations . . . ." Comm'r Br. at 33. The Appeals Officer could not overturn those determinations, he says, and so the Service's earlier compliance—or non-compliance—with the supervisory approval requirement became irrelevant.

We must decline the Commissioner's invitation to read into Section 6330(c)(1) the limitation that Section 6751(b)(1) was "applicable" before the underlying tax liabilities and penalties were finally adjudicated in the Tax Court, but not thereafter. Nothing in the text of Section 6330(c)(1) suggests that the scope of the Appeals Officer's verification obligation is altered by the happenstance that the underlying liabilities were previously litigated and decided. *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

---

[14] Even the Commissioner concedes that, "if [Section] 6751(b)(1) applies to a penalty that becomes the subject of a CDP hearing, then the appeals officer *generally* should obtain verification that proper supervisory approval of the penalty was obtained." Comm'r Br. at 24 (emphasis added).

Congress expressly excluded certain taxes from Section 6751(b)(1)'s supervisory approval requirements. *See* I.R.C. § 6751(b)(2); *ATL & Sons Holdings, Inc. v. Comm'r*, 152 T.C. 138, 144, 148–54 (2019) (describing types of penalties exempt from the supervisory approval requirement).[15] But it did not do so here, and the Commissioner does not (and cannot reasonably) contend that any of these stated exceptions actually applies to the penalties that the IRS seeks to collect in the cases now before us. The Code broadly defines "penalty" as "any addition to tax or any additional amount," I.R.C. § 6751(c), further signaling an inclusive intention on Congress's part. Taken together, these observations reinforce that in Section 6751, "any" means "any."

The Commissioner also fails to persuade when he invokes other provisions within Section 6330 to support his view that verification of the penalties' supervisory approval is not required for the Service to assert liens and to levy on taxpayers' property. For example, the Commissioner points to Section 6330(c)(2)(B), which permits a taxpayer to raise "challenges to the existence or amount of the underlying tax liability" at CDP hearings only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." *Id.* § 6330(c)(2); *see ante*, note 8; Comm'r Br. at 21–22, 29–32. As the Fourth Circuit has explained, Section 6330(c)(2)(B) "incorporate[s] the principle[] of claim preclusion . . . into the CDP context," animated by the idea that "CDP hearings do

---

[15] Section 6751(b) expressly exempts the following from the supervisory approval requirement:

> (A) any addition to tax under section 6651, 6654, 6655, or 6662 (but only with respect to an addition to tax by reason of paragraph (9) or (10) of subsection (b) thereof); or

> (B) any other penalty automatically calculated through electronic means.

I.R.C. § 6751(b)(2).

not afford taxpayers a chance to relitigate questions that have already been settled or should have been." *Iames*, 850 F.3d at 167.

But while the Taxpayers here each had an opportunity to dispute their underlying tax liabilities, including the assessed penalties, and availed themselves of those opportunities, res judicata—as codified in Section 6330(c)(2)(B)—does not preclude them from raising the *verification* issue in their CDP hearings, because a challenge on verification grounds is not a "challenge[] to the existence or amount of the underlying tax liability." I.R.C. § 6330(c)(2)(B). True, the IRS does not have authority to impose a penalty unless supervisory approval of it is obtained, so disputing whether a penalty received supervisory approval in the first place implicates "the existence or amount of the underlying tax liability," including the assessed penalties. *Id*.; *see Chai v. Comm'r*, 851 F.3d 190, 222 (2d Cir. 2017) ("[T]he written-approval requirement of [Section] 6751(b)(1) is appropriately viewed as an element of a penalty claim, and therefore part of the IRS's *prima facie* penalty case.").[16] But whether *supervisory approval* of the penalty was in fact obtained pre-assessment (as called for by Section 6751(b)(1)) presents a question separate from that of whether the Appeals Officer *verified* compliance with the supervisory approval requirement at a post-assessment CDP

---

[16] The record before us does not establish, so far as we can tell, that supervisory approval was in fact obtained for the penalties imposed on the Taxpayers. We held in *Chai* that "the written-approval requirement of [Section] 6751(b)(1) is . . . an element of a penalty claim, and therefore part of the IRS's *prima facie* penalty case." *Chai*, 851 F.3d at 222. As explained above, however, the Taxpayers' assessed penalties and overall liabilities have already been litigated and conclusively determined, *see ante*, note 10, and the Taxpayers did not raise any issues related to the supervisory approval requirement in these underlying liability proceedings. *See Chai*, 851 F.3d at 223 (explaining that while the Commissioner bears the burden of proving that the supervisory approval requirement has been met, taxpayers have "the responsibility of *arguing* in the Tax Court that the Commissioner had not complied with [Section 6751]" (internal quotation marks omitted)). The "existence or amount" of the assessed penalties is thus not at issue in this appeal.

hearing (conducted under Section 6330(c)(1)). *Cf. Pfetzer*, 2021 WL 6143712, at *4 ("[P]roper verification is not a challenge to the underlying liability; it is a stand-alone requirement in section 6330(c)(1) and is independent of the issues that may be considered under section 6330(c)(2) (such as the taxpayer's underlying tax liability).").

From a distance, that difference may seem insubstantial, but it carries real-world implications. Because Section 6330(c)(1)'s verification requirement does not attach until the CDP hearing stage, when collection actions—not the underlying liability—are at issue, "proper verification" is not an issue that the Taxpayers could have raised in the earlier litigation adjudicating their underlying tax liability. Thus, res judicata, as codified in Section 6330(c)(2)(B), has not attached to the Taxpayers' challenge to the Appeals Officer's failure to verify supervisory approval. *See* I.R.C. § 6330(c)(2)(B). And the Appeals Officer's failure to comply with the verification requirement has no impact on a taxpayer's underlying tax liability in substance or amount: the Appeals Officer's failure to verify bears only on the IRS's authority to collect the assessed penalty amounts through liens or levies; it does not preclude the IRS from collecting the assessed penalty amounts through other measures.[17] As counsel for the Commissioner acknowledged at oral argument in our court, the government may, for example, file a

---

[17] This Court has interpreted Section 6751 to have a timing requirement: it requires the individual making the penalty determination to obtain written approval of the initial penalty determination "*no later than the date the IRS issues the notice of deficiency* (or files an answer or amended answer) asserting such penalty." *Chai*, 851 F.3d at 221 (emphasis added). We explained that, by enacting Section 6751(b) as a part of the Reform Act, *see* § 3306, 112 Stat. at 744, Congress aimed "to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." *Chai*, 851 F.3d at 219; *see also* Report to Accompany H.R. 2676, S. Rep. No. 105-174, at 65 (1998) ("The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip."). The Service thus cannot satisfy Section 6751 by obtaining retroactive approval of the penalties, and so must pursue other means of collection that do not require the Appeals Officer to verify that the Service complied with this provision. *See* Transcript of Oral Argument at 13 (counsel for the Commissioner confirming that there is no way for the Service to "backtrack" and obtain supervisory approval for these penalties).

complaint in U.S. District Court, reduce to judgment the amounts owed, and then use state remedies to collect on that judgment. *See* Tr. of Oral Argument at 13:19–21; *see also* I.R.C. §§ 7401 *et seq*. What the Service loses is its ability to enforce its liens against the Taxpayers' property and to use its expedited levy process, at least insofar as they relate to the penalties assessed against the Taxpayers.[18]

In that way, this procedural limit is consonant with the Code's broader enforcement scheme. To ensure fairness in the determination of penalty liabilities, the Code requires supervisory approval of that imposition by a more senior official. I.R.C. § 6751(b)(1). And to ensure fairness in the use of expedited and intrusive collection tools such as federal tax liens and levies, the Code requires Appeals Officers to double check that all applicable requirements, including the supervisory approval requirement, were satisfied before allowing those collections to go forward. *Id.* § 6330(c)(1). This latter requirement stems from Congress's desire to "establish[] formal procedures designed to insure due process" at the collections stage specifically, and particularly the "collect[ion of] taxes by levy (including by seizure)." *Report to Accompany H.R. 2676*, S. Rep. No. 105-174, at 67 (1998). Thus, these dual, layered requirements serve important—and different—functions within the broader statutory scheme.

---

[18] We do not decide whether the Appeals Officer's failure to comply with Section 6330(c)(1)'s verification requirement bars collection by liens and levies of only the penalties to which Section 6751(b)(1)'s supervisory approval requirement attaches or of the entire tax liability addressed in the Notices of Determination. In its initial, later vacated, summary judgment rulings, the Tax Court denied summary judgment only as to the Service's collection of the assessed penalties by liens and levies. But the parties seemed to suggest at oral argument in our Court that the Service would have to collect all amounts owed by the Taxpayers—tax deficiencies, penalties, and interest—by other means. *See* Transcript of Oral Argument at 6, 9–10, 13–14. We question why this provision should bar the use of liens and levies to collect the underlying tax liabilities (as opposed to penalties). Because the parties did not brief this issue, however, we leave it for another day (including, perhaps, for resolution by the Tax Court on remand).

In any event, Section 6330(c)(2)(B) has little bearing on the Appeals Officer's verification obligation under Section 6330(c)(1). Section 6330(c)(2)(B) governs what issues *the taxpayer* may raise at a CDP hearing. *See* I.R.C. § 6330(c)(2)(B) ("*The person* may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period . . . ." (emphasis added)). The *Appeals Officer* has a freestanding obligation under Section 6330(c)(1) to verify that the requirements of any applicable law or procedure have been met: that statute provides that "[t]he appeals officer *shall* at the hearing obtain verification from the Secretary that [such] requirements . . . have been met." *Id.* § 6330(c)(1) (emphasis added). The verification obligation thus exists whether or not a taxpayer raises the issue. In other words, even if Section 6330(c)(2)(B) precluded the Taxpayers from questioning the IRS's compliance with Section 6751(b)(1)'s supervisory approval requirement at the CDP hearing, the Appeals Officer had an independent obligation under Section 6330(c)(1) to verify the Commissioner's compliance with this requirement.[19]

Section 6330(c)(1) unambiguously states its requirements, and the Service bore the burden of demonstrating compliance. The Commissioner does not contend that the approval required by Section 6751(b)(1) was obtained. Because the burden of proving compliance is on the Commissioner, we draw the inference that the required approval was not obtained.

---

[19] The Commissioner additionally cites Section 6330(c)(4)(A) in support of his position. That section "precludes any issue that 'was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding' in which the taxpayer meaningfully participated." *Jeffers v. Comm'r*, 992 F.3d 649, 655 (7th Cir. 2021) (quoting I.R.C. § 6330(c)(4)(A)); *see also Iames*, 850 F.3d at 167 (observing that Section 6330(c)(4)(A) "incorporate[s] the principles of claim preclusion and issue preclusion into the CDP context"). Because neither the record nor any party suggests that compliance with Section 6751(b)(1) was raised or considered in the earlier liability proceedings, however, we do not address Section 6330(c)(4)(A) further here.

Where it applies to the penalties that are the subject of the IRS's collection efforts, Section 6751(b)(1) is an "applicable law," and the IRS's compliance with that law is subject to verification in CDP hearings. I.R.C. § 6330(c)(1). Section 6330(c)(1) contains no res judicata carveout: it states no exception to the Appeals Officer's obligation to "obtain verification . . . that the requirements of any applicable law or administrative procedure have been met" for cases where the taxpayer's underlying liability has been conclusively adjudicated. *Id.* Liens and levies are intrusive collection methods and requiring verification that written supervisory approval of penalties imposed was obtained provides an additional incentive, in line with the goals of the Reform Act, for the Service to be meticulous in its imposition of penalties and, consequently, in its use of those methods to collect tax. Because the Appeals Officer failed to verify that this requirement was met, the Tax Court erred in upholding the IRS's authority to impose the liens and to effect the proposed levies for collection of the penalties.

Our decision does not affect the Taxpayers' liabilities for either the deficiencies in payment of taxes due or the penalties imposed, as those have been previously determined by rulings of the Tax Court. Our decision affects only the use of Code-authorized liens and levies. Furthermore, as to the use of liens and levies, our decision affects only their use to collect penalties, because the Commissioner's failures related only to the requirements for imposition of penalties. *See supra* note 18.

Finally, our decision depends on the combined effect of two failures by the Service: (i) the failure of the Appeals Officer at the CDP hearing to verify whether the IRS employee imposing penalties had complied with the requirement of Section 6751(b)(1) to obtain prior written approval of a supervisor; and (ii) that officer's failure to obtain the prior written approval required by Section 6751(b)(1). If the circumstances were that the Appeals Officer failed to verify whether the officer imposing the penalty had obtained prior approval, but subsequent inquiry showed that in fact the required

written prior approval had been obtained, the IRS could possibly be permitted to cure its verification error on remand and eventually use liens and levies to collect the penalties. *See Hoyle v. Comm'r*, 136 T.C. 463, 468 (2011) ("*Hoyle II*") (explaining that in *Hoyle I*, the Tax Court remanded the case "for the Appeals Office to determine, as a part of its verification [under Section 6330(c)(1)] whether a notice of deficiency was properly mailed to petitioner," and holding that when making this determination on remand, the Appeals Officer "was not limited to what the original Appeals [O]fficer considered"); *Rivas v. Comm'r*, 113 T.C.M. (CCH) 1268, 2017 WL 1224708, at *4 (T.C. 2017) (collecting cases in which the Tax Court "remanded . . . to allow [the] Appeals [Office] to supplement the administrative record with sufficient evidence to meet the section 6330(c)(1) verification requirement"). Because that circumstance is not before us, we make neither ruling nor suggestion as to the appropriate course of action in such a case. We leave that question to be resolved in a case that raises it.

## II.    The Commissioner's remaining arguments fail.

Without a meaningful answer to the literal text of the statute, the Commissioner falls back on his claim that verification of compliance with Section 6751(b)(1) would serve "no bona fide interest." Comm'r Br. at 33. He argues that verification in cases where liability has already been conclusively determined would be meaningless, practically speaking, because "the appeals officer was bound by and could not have set aside the Tax Court's earlier decisions determining the penalties." *Id*. We again disagree.

In advancing this argument, the Commissioner conflates the supervisory approval requirement and the verification requirement. Failure to satisfy the former precludes the IRS from imposing a penalty, *see* I.R.C. § 6751(b)(1); failure to satisfy the latter precludes the IRS from using liens or levies to collect what is owed, *see id.*

25

§ 6330(c)(1). In essence, a successful challenge here based on the Appeals Officer's failure-to-verify would eliminate the IRS's authority to impose liens or levies without affecting the underlying liabilities and penalties themselves. *See* Tr. of Oral Argument at 6:2–7 (counsel for the Taxpayers explaining that reversal of the Tax Court's grant of summary judgment "would prevent the collection by [liens and levies] of the amounts that the [T]ax [C]ourt previously determined were owing. But it would not invalidate the determination that those amounts were, in fact, owed.").

By verifying in the CDP hearing that the IRS complied with the supervisory approval requirement, then, the Appeals Officer would not revisit the Tax Court's underlying liability determinations. Nor would requiring such verification "place the administrative agency in review of the [Tax] Court." *Warner Enters., Inc.*, 2022 WL 3584090, at *4. Moreover, as mentioned above, prohibiting collection by lien or levy does not preclude collection altogether. The Commissioner may still pursue collection through other means, such as reducing the liability to judgment in a civil action filed by the government in U.S. District Court. From the Commissioner's point of view, that alternative is surely more cumbersome and less desirable than the measures described in the Code, but it is still an available means.

The Commissioner nevertheless asserts that accepting the Taxpayers' interpretation leads to an "absurd result[]." Comm'r Br. at 37. As the Commissioner puts it, the distinction between verification of supervisory approval and obtaining supervisory approval is artificial: if the Taxpayers are not in fact challenging whether *supervisory approval* was given, he asks, what point is there in requiring that the Appeals Officer *verify* that it was?

Unlike the Commissioner, we identify a difference, in timing and in meaning, between obtaining supervisory approval for a penalty in the first instance and later verifying, at the collection phase, that it was given before allowing the Service to collect

the penalties through liens and levies. We can be confident that the Service (and taxpayers generally) have an interest in ensuring that individual approval of proposed penalties was duly obtained before penalties were imposed, as a matter of the integrity of Service operations. And in any event, "our constitutional structure does not permit this Court to rewrite the statute that Congress has enacted." *Commonwealth of Puerto Rico v. Franklin Calif. Tax-Free Tr.*, 579 U.S. 115, 130 (2016) (internal quotation marks omitted). In attempting to equate the supervisory approval and verification requirements, the Commissioner ignores the fact that failure to comply with each requirement has distinct consequences: as we have pointed out, whereas the IRS's initial failure to obtain supervisory approval precludes it altogether from imposing penalties, the Appeals Officer's failure to verify that approval was obtained does no more than limit the methods available to the IRS for collecting the Taxpayers' liabilities. That limitation is inconvenient for the Service, to be sure, but the result is hardly absurd and reasonably can be understood as creating an additional safeguard for taxpayers before penalties are collected through expedited means.

Our conclusion fits comfortably with what we perceive to be Congress's vision for the function of Section 6330 in the overall scheme of the Tax Code. Section 6330's "general focus" rested "on the Commissioner's collection of a predetermined liability, not the merits of that liability." *Iames*, 850 F.3d at 165. In a scheme designed "to make the collection process less onerous, to encourage negotiation between taxpayers and the Commissioner, and to impose a measure of procedural regularity and oversight on the Commissioner's significant and previously unfettered power to levy, . . . Congress envisioned only limited CDP review of the taxpayer's underlying liability." *Id.*; *see also id.* at 166 ("[W]ithin this collection-focused framework, liability review plays no more than a minor part[.]"); *Jeffers v. Comm'r*, 992 F.3d 649, 655 (7th Cir. 2021) ("Congress enacted the [Reform Act] as a procedural protection for taxpayers to oppose IRS

*collection* actions, with mere incidental review of underlying liability in specifically enumerated instances."); *Report to Accompany H.R. 2676*, S. Rep. No. 105-174, at 67 (1998) (explaining that CDP "procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers"). Our decision—that Section 6330(c)(1) imposes an obligation on the Appeals Officer conducting the CDP hearing to verify that the supervisory approval requirement was met—does not in our view unduly expand "the peripheral role Congress accorded to liability challenges at the CDP stage." *Iames*, 850 F.3d at 166. And we stress that our ruling does not disturb the Tax Court's earlier, underlying liability determinations or other collection techniques: it bears only on whether the IRS may collect the amounts of the penalties owed by the Taxpayers by lien or levy.

\*     \*     \*

We therefore conclude that, where Section 6751(b)(1) applies to the penalties that are the subject of the IRS's collection efforts, Section 6330(c)(1) requires the Appeals Officer conducting a CDP hearing with respect to a lien or proposed levy to verify that Section 6751(b)(1)'s supervisory approval requirement was met. Otherwise stated: the Appeals Officer must verify that the IRS employee who determined the penalties obtained written supervisory approval "no later than the date the IRS issue[d] the notice of deficiency (or file[d] an answer or amended answer) asserting such penalty." *Chai*, 851 F.3d at 221. In the cases on appeal, no party points to any record evidence that the Appeals Officer made such a verification. Nor is there evidence showing that the IRS employees who assessed penalties in this case obtained prior written supervisory approval. Accordingly, the Tax Court erred in granting summary judgment for the Commissioner insofar as it determined that the Appeals Officer complied with Section 6330(c)(1), and the Appeals Officer abused his discretion in upholding the liens and proposed levies.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the Tax Court's orders and **REMAND** for further proceedings consistent with this opinion.